622 P.2d 55

Elias **VENERIAS**, Plaintiff-Appellee,

v.

Elinor **JOHNSON**, Mary **Soncrant**, Defendants-Appellants.

No. 1 CA–CIV 4343.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 4, 1980.

Rehearing Denied Dec. 19, 1980.

Review Denied Jan. 7, 1981.

Charles Christakis, Phoenix, for plaintiff-appellee.

Wade E. Church, Phoenix, for defendants-appellants.

## OPINION

DONOFRIO, Judge.

This action was commenced on December 6, 1976, when the plaintiff-appellee Elias Venerias (hereinafter referred to as Venerias) filed a complaint setting forth five counts against Elinor Johnson, Edward Johnson, Joseph Cermak, Jane Doe (Dorothy) Cermak, Mary Soncrant, and Save Youngtown for Retirees, a non-profit organization. These five counts were:

Count 1. Emotional damages as the result of harassment. (intentional infliction of severe emotional distress)

Count 2. Malicious interference with a contract for the sale of property.

Count 3. Assault against defendant, Joseph Cermak.

Count 4. Trespass against defendant Elinor Johnson, and

Count 5. Malicious prosecution against defendant Mary Soncrant.

Counterclaims were filed by appellant-defendant Elinor Johnson (hereinafter referred to as Johnson) for assault and by defendant Joseph Cermak (hereinafter referred to as Cermak) for assault.

The case was tried before a jury but before the submission of the case to the jury the court dismissed the following:

1. Count 2 of the plaintiff's complaint;
2. Count 4 of the plaintiff's complaint;
3. Count 5 of the plaintiff's complaint;
4. Count 1 of the defendant's counterclaim;
5. Count 2 of the defendant's counterclaim;
6. Save Youngtown for Retirees as a defendant, and
7. Dorothy Cermak as a defendant.

Only Count 1 of the complaint and Count 3 of the complaint remained for jury consideration.

At the close of the evidence, defense counsel filed a motion for directed verdict on Count 1 of the complaint. The motion was denied. The jury's verdict on Count 1 of the complaint was (1) against Johnson in

the sum of $15,000 actual damages and $40,000 punitive damages; (2) against the defendant Mary Soncrant (hereinafter referred to as Soncrant) in the sum of $15,000 actual damages and $25,000 punitive damages.

On Count 3 of the complaint the jury found for Cermak and against Venerias.

Motion was made by defendants for judgment notwithstanding the verdict or in the alternative, motion for new trial and motion for remittitur. These motions were denied.

Soncrant and Johnson appealed from the judgment entered against them and in favor of Venerias on Count 1 of his complaint.

Johnson and Cermak have also appealed from that part of the judgment dismissing their counterclaim of assault against plaintiff-counter-defendant/appellee Venerias. We affirm this part of the judgment.

## FACT SITUATION

In order to understand the chain of events which gave rise to this lawsuit it is important to understand the nature of the community in which these individuals resided. Youngtown, Arizona, is primarily populated by retired persons. During 1974 an organization called Save Youngtown for Retirees was formed and incorporated. Its purpose was to maintain Youngtown as a retirement community. To accomplish this purpose, the organization tried to have the City Council pass an ordinance prohibiting families with minor children from moving in and also attempted to amend the deed restrictions on the property. The organization, through its secretary, sent eviction notices to families with children who bought or rented homes in the town. During 1975, Soncrant was the organization's president and Johnson was its secretary.

Testimony of the parties at the trial as to the events giving rise to this action was in sharp conflict.

In March of 1975, Venerias and his two minor sons moved into Youngtown. Venerias testified that as they were moving into their house Johnson walked into the house and told Venerias that they could not live there and that they would be getting an eviction notice. According to Venerias, shortly thereafter, he received telephone calls from Johnson telling them that they were breaking the law by living in Youngtown, to get out and that they would be in trouble if they stayed. Also, Venerias contended that in June of 1975, Johnson came to his door and handed him an eviction notice. Venerias' two sons testified that on six or seven occasions when they were walking, biking, or jogging in the community Johnson would swerve her car close to them in an attempt to run them down. Venerias admitted that he had never witnessed any of these alleged car incidents.

Johnson denied any of these contacts. In fact, she denied any contact with Venerias or his sons prior to December 7, 1975. On December 7, 1975, Venerias testified that Johnson trespassed on his property and was taking pictures of his pick-up truck. According to Venerias when he saw her taking these pictures, he went out of his house and ordered her off his land. Instead of going as requested, Johnson remained on his property and continued to take pictures. Because she continued to take pictures despite his request to leave, Venerias went back inside his house and called the police.

Johnson admitted that she was taking pictures of Venerias' pick-up truck which was parked in his yard. She testified that the purpose of this picture taking was that she was conducting a survey for the organization, Save Youngtown for Retirees, pursuant to its resolution that the City Council pass an ordinance prohibiting pick-up trucks in front yards. However, she denied that she had trespassed in order to take these pictures. Furthermore, she claimed that Venerias did not request her to leave in a civil manner but rather screamed and yelled at her and threatened to kill her. Venerias testified that Cermak also trespassed on his property and was taking pictures of his pick-up truck on December 7, 1975. Venerias further contended that when he went out of his house to order Cermak off his property, Cermak, instead

of complying with this order, pushed and shoved him back toward his pick-up truck and that because of this pushing and shoving by Cermak, Venerias sustained neck and shoulder injuries.

Cermak admitted that he did take pictures of Venerias' pick-up truck on December 7, 1975. However, he contended that he did not trespass on Venerias' property in order to take these pictures. He further alleged that when Venerias saw him taking these pictures he came out of his house swinging a towel, jumping around and yelling and threatening to castrate and kill him.

Soncrant lived across the street from Venerias and his sons during the summer of 1976. A grandson of Soncrant's lived with her. Venerias testified that Soncrant and her grandson would threaten and swear at his boys and him whenever they were out in the yard. The content of the threats were that they were going to get them out of town and that they did not belong in the community. Venerias further testified that Soncrant called the police numerous times without justification complaining that he was disturbing the peace and that because of these calls the police would come to his house at night and question him. In June of 1976, Soncrant filed a complaint for disturbing the peace against Venerias. Venerias appeared before the city magistrate who dismissed the complaint. Venerias contended that this complaint was filed maliciously without probable cause and without any factual justification.

Soncrant denied that she would threaten and swear at Venerias and the sons whenever they were in the yard. She admitted that she called the police and filed a complaint concerning Venerias' disturbing the peace but testified that such actions were justified in that Venerias was often yelling and screaming on his premises and that this noise would disturb her tranquility on her property.

Venerias testified that the combined actions of the defendants caused him to become a nervous wreck. He also contended that the assault by Cermak caused him to undergo medical treatment.

From these facts we conclude the following:

At the outset we find that the trial court's dismissal of defendants Johnson's and Cermak's counterclaims of assault based on the alleged incidents occurring on December 7, 1975, was not in error in that Venerias had no apparent ability to carry through on his alleged threats.

As to the remaining cause of action, namely the intentional infliction of severe emotional distress, Soncrant and Johnson contend that it was error for the trial court not to grant their motions for a directed verdict and judgment notwithstanding the verdict in their favor. We agree.

Arizona courts have recognized the tort of intentional infliction of emotional distress. The Arizona courts have recognized the elements of this tort as set out in Restatement of Torts (2nd), Ch. 2, Emotional Distress, § 46 (1965), which provides in pertinent part:

"§ 46. Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

There are four elements which must coincide to impose liability for intentional infliction of emotional distress: (1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress must be severe.

In reviewing this case, we must view the evidence in the light most favorable to upholding the verdict. *Lashinsky v. Hoffman*, 3 Ariz.App. 44, 411 P.2d 467 (1966). In viewing the evidence as such, it is crystal clear that the actions of Soncrant and Johnson were intentional. However, we need not decide whether these actions

were extreme or outrageous or causally related to the emotional distress which Venerias allegedly suffered because the fourth element of the tort—that the emotional distress must be severe—was not established by legally sufficient evidence justifying submission of the case to the jury.[1] That element of the cause of action required that Venerias show that he has suffered a severely disabling emotional response to the defendant's conduct. The severity of emotional distress is not only relevant to the amount of recovery, but is a necessary element to any recovery. Comment j of § 46 of the Restatement, elaborates on this requirement:

"j. Severe emotional distress. The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed. For example, the mere recital of the facts in Illustration 1 above goes far to prove that the claim is not fictitious.

The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge. See Comment f.

It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed."

We reiterate that it is for the court to determine whether on the evidence severe emotional distress can be found. The only testimony relating to the emotional distress caused Venerias due to the alleged conduct of Soncrant and Johnson was that he became a "nervous wreck."

Our examination of the entire record reveals that:

1. There was no evidence that Johnson's or Soncrant's actions caused Venerias any loss of earnings;

2. There was no physical damage claimed by Venerias as the result of the activities of either Soncrant or Johnson;

3. There was no evidence of any medication purchased by Venerias as the result of the activities of either Johnson or Soncrant, and

4. There was no evidence that Venerias was hampered in any respect from performing his daily functions.

We must conclude that the alleged nervousness suffered by Venerias was not as a matter of law so intense as to constitute the severe emotional distress required to recover for the tort of intentional infliction of emotional distress.

Our disposition of all the claims brought in this lawsuit make it unnecessary for us to discuss the other propositions advanced by appellants' counsel.

Affirmed in part. Reversed in part.

FROEB, P. J., and WREN, J., concur.

---

1. In so concluding, we assume the truth of all the evidence in such instances as may properly be drawn therefrom which tend to support the plaintiff's right to recovery. *W. R. Skousen Contractors, Inc. v. Gray*, 26 Ariz.App. 100, 546 P.2d 369 (1976).