694 P.2d 316

**Dora Lee RUSTIN, Plaintiff/Appellee,**

v.

**Ellis Harrison COOK, Defendant/Appellant.**

**No. 2 CA–CIV 5092.**

Court of Appeals of Arizona, Division 2.

Oct. 25, 1984.

Review Denied Dec. 18, 1984.

---

Rubin Salter, Jr., Tucson, for plaintiff/appellee.

Sorenson, Moore & Julian by John S. Schaper, Phoenix, for defendant/appellant.

## OPINION

BIRDSALL, Chief Judge.

The plaintiff/appellee, Dora Lee Rustin, was injured on February 10, 1979, when the automobile she was driving was struck from behind by one driven by the defendant/appellant, Ellis Harrison Cook. At the time, the appellee's vehicle was stopped in obedience to a traffic signal. The appellant had been drinking from 6 p.m. to 10 p.m. and was intoxicated. The collision occurred shortly after 10 p.m.

The appellee's principal injury was a strained cervical and lumbosacral spine. Her injuries caused her to lose some time at work. She was a laborer at the Duval Mine. The jury verdicts were for $32,-488.29 compensatory and $52,387.49 punitive damages.

We must decide the following questions on appeal:

1) Does the appellee's failure to disclose some discoverable matters prior to trial require a new trial?

2) Was certain disability pay received by the appellee a collateral source?

3) Should the damage awards be limited to the amounts contained in the prayer of the complaint?

4) Is the punitive damage award supported by the evidence?

We answer all these questions in the appellee's favor and affirm.

### Disclosure

In responding to discovery requests, the appellee did not disclose four accidents which were subsequently found at the time of trial to have been documented in her medical and personnel records:

First, she was involved in an automobile accident on August 1968, for which she had been treated by her personal physician. Second, she had made an industrial claim in connection with a back injury sustained on January 26, 1979, approximately two weeks prior to the accident involving the defendant. Third, on May 20, 1981, she hurt herself while moving barrels at work, and was off from that date until June 8, 1981. Fourth, she had fallen at work on July 17, 1981, and apparently injured her back. She was off work for this condition from July 20, 1981, to December 14, 1981, when she was laid off due to a reduction in force.

All of this information which came to light during trial had not been disclosed by the appellee during discovery proceedings, although her deposition had been taken, uniform interrogatories answered, and two sets of supplemental interrogatories submitted requesting all relevant medical data.

The appellant argues that if those accidents had been disclosed, he would have been able to (1) depose the physician who examined the appellee on behalf of her employer, Duval Mines, to determine the nature and extent of any physical impairments which he found relating to her industrial injuries, (2) determine the nature and extent of any medical or compensation benefits which the appellee received as a result of her industrial injuries, and (3) determine whether the disability claimed by the appellee as the result of the automobile accident

was in fact due to previous accidents and injuries, or the subsequent accidents and injuries. He contends such information was critical because of the limited issues tried in this case involving only the appellee's claim for damages.

When these matters came to light, the appellant cross-examined the appellee concerning each and impeached her with the previous negative discovery answers. He also questioned her medical witnesses.

In response, the appellee lamely suggests that the interrogatory asked only if she had suffered any prior or subsequent *injuries* in any accidents. She then claims to have answered truthfully as to the industrial accidents because she was not "injured." She claims to have forgotten the 1968 auto accident. Although her faulty memory concerning the 1968 accident may be understandably forgiven, her contention that she was not injured in the industrial accidents is unacceptable. She made an industrial claim for a January 1979 injury and she reported the two subsequent accidents to her physician. Neither can we accept her argument that the appellant could have discovered these incidents by pursuing other means of discovery. The appellant had a right to rely upon her answers to the interrogatories and the answers should have disclosed the accidents.

> The purpose of discovery procedure under our Rules of Civil Procedure is to avoid the element of surprise and prevent the trial of a lawsuit from being a "guessing game."

*Watts v. Superior Court*, 87 Ariz. 1, 5, 347 P.2d 565, 567 (1959). *And see Ries v. McComb*, 25 Ariz.App. 554, 545 P.2d 65 (1976) (failure to disclose witness and exhibit, new trial granted because of surprise).

■ This issue was not raised until the appellant's Rule 59 motion for new trial, which the trial court denied. The ground argued in that motion was that this was material evidence, newly discovered, which with reasonable diligence could not have been discovered and produced at trial. Rule 59(a)(4), Rules of Civil Procedure, 16

A.R.S. A motion for new trial based upon that ground calls for the exercise of discretion on the part of the trial court. *Sabin v. Rauch*, 75 Ariz. 275, 255 P.2d 206 (1953). To secure a new trial upon the ground of newly discovered evidence, it must appear that the evidence is such that it would probably change the result. *Sabin v. Rauch, id.*

■ On appeal the appellant urges a different ground. Using the same inaccurate answers to the interrogatories, he now claims that a new trial should have been ordered because he was unable to prepare properly for trial, relying on Rule 59(a)(2), misconduct of the prevailing party. This ground may not now be considered on appeal. *Sun Lodge, Inc. v. Ramada Development Co.*, 124 Ariz. 540, 606 P.2d 30 (App.1979); *Hays v. Richardson*, 95 Ariz. 64, 386 P.2d 791 (1963), *modified on reh'g*, 95 Ariz. 263, 389 P.2d 260 (1964).

■ Assuming, arguendo, that we may consider the issue as one involving misconduct or surprise, Rule 59(a)(3), we would still be bound to affirm the trial court's order denying a new trial. Even though we believe that the answers to the interrogatories were evasive, incomplete, and inaccurate, we believe that the trial court should have been given some opportunity when the problem first appeared to attempt to rectify the error. There were other appropriate sanctions which could have been considered. The Advisory Committee Note to Federal Rule 26(e) says that "[t]he duty will normally be enforced, in those limited instances where it is imposed, through sanctions imposed by the trial court, including exclusion of evidence, continuance, or other action, as the court may deem appropriate." The cases appear to be almost uniform in holding that the trial court has broad discretion concerning sanctions imposed for failure to supplement an answer or making an incorrect response. Sanctions imposed include excluding testimony, *Barnes v. St. Francis Hospital, Inc.*, 211 Kan. 315, 507 P.2d 288 (1973) and continuance, *Young v. Saroukos*, 6 Storey 44, 56 Del. 44, 189 A.2d 437 (1963).

■ We also believe the trial court could properly have considered a motion for mistrial if it had been made when the problem first surfaced. Although granting a new trial has been approved, *see Voegeli v. Lewis,* 568 F.2d 89 (8th Cir.1977); *Aulgur v. Zylich,* 390 S.W.2d 553 (Mo.App.1965); *Abbatemarco v. Colton,* 31 N.J.Super. 181, 106 A.2d 12 (1954), such a sanction is clearly within the broad discretion of the trial court. It does not appear that this discretion was abused in the instant case. We believe that the trial court could very properly have considered the fact that no timely objection was made and it was not until after the unfavorable verdicts that the trial court was asked to act. *Miller v. Palmer,* 143 Ariz. 84, 691 P.2d 1112 (App.1984). *See also* Wright & Miller, Federal Practice and Procedure: Civil § 2050.

■ The appellant also suggests that he was surprised by this trial development. In that regard, our supreme court said long ago in *Walker v. Gray,* 6 Ariz. 359, 57 P. 614 (1899):

> Surprise which is the result of no lack of diligence, and which operated to the prejudice of the party surprised, upon the trial, and prevented his obtaining evidence material and competent, is a good ground for the granting of a new trial. The party affected, however, must first have exhausted all his other remedies, before he is entitled to a new trial. He will not be permitted to take his chances of obtaining a verdict or decision, and to then for the first time avail himself of the point on motion for a new trial. 6 Ariz. at 359, 57 P. 614.

*Ries v. McComb, supra,* is distinguishable. Although the appellate court reversed and remanded for failure to grant a new trial because of surprise, the opinion notes that "vigorous objection" to the questioned evidence was made in the trial court. No such record was made in the instant case and we believe the language from *Walker v. Gray, supra,* is controlling.

### Collateral Source

The appellee received disability pay during the time she was unable to work. This benefit resulted from the union's collective bargaining agreement with Duval. The payments were apparently made under a mandatory wage continuation plan. The appellant contends that the collateral source rule should not apply and that he should have been able to show the receipt of this disability pay in diminution of the appellee's damages. We disagree.

■ Our decision in *Hall v. Olague,* 119 Ariz. 73, 579 P.2d 577 (App.1978), is controlling. The appellee's disability pay was, at least indirectly, the result of her employment contract. She received the pay from a collateral source, her employer. Restatement 2d Torts, Sec. 920(A)(c)(2) recognizes that benefits arising out of a union contract are a collateral source. The trial court properly refused to allow evidence of the disability payments.

### Damage Awards

The appellee's complaint prayed for $15,000 in compensatory and $5,000 in punitive damages. The complaint was never amended. Although the transcript suggests that a pretrial statement was made it is not a part of the appellate record. From the dialogue appearing in the transcript, we gather it was misplaced and never made a part of the superior court file. Relying upon *Smith v. Tang,* 100 Ariz. 196, 412 P.2d 697 (1966), the appellant argues that a remittitur should have been ordered reducing the damage awards to the amounts in the prayer.

■ Our review of the record reveals that this issue, presented for the first time in the Rule 59 motion, was waived. The appellant made no request for an instruction limiting the damages to the amount prayed. Nor was any exception taken to the standard jury instruction which the court advised would be given. Thus the jury was instructed "you must fix the amount of money which will reasonably and fairly compensate...." With regard to punitive damages, the jury was instructed, "the amount is left to your sound dis-

cretion." Likewise there was no objection when the appellee's counsel argued for the larger amounts. We hold that these omissions amount to waiver. The appellant could not properly reserve this issue for his Rule 59 motion.

### Punitive Damage Award

The appellant contends that no evidence supported the punitive damage award. We disagree.

 The appellant registered a 1.7 blood alcohol level on his breathalyzer test. The investigating officer testified that the appellant was under the influence. He admitted to drinking several beers. This evidence of driving when intoxicated supports a finding of acting with reckless indifference to the rights of others.

The appellant also contends that there was "absolutely no evidence" concerning the wealth of the defendant or his ability to pay. This is not so. The evidence shows that the appellant was a fireman earning $22,000 annually, a bi-weekly take home pay of $600, and that he lived from payday to payday. Notwithstanding this, there is no requirement in Arizona that a plaintiff present evidence of the defendant's wealth to recover punitive damages. *See Nienstedt v. Wetzel,* 133 Ariz. 348, 651 P.2d 876 (App.1982); *Ahmed v. Collins,* 23 Ariz.App. 54, 530 P.2d 900 (1975).

Although the appellant does not specifically challenge the amount of the punitive damage award, we observe that such an award will not be disturbed unless it is so unreasonable in light of the circumstances as to show passion or prejudice. The size of the award is not sufficient evidence of passion or prejudice. When the trial court has refused to order a remittitur, we will not interpose our judgment unless convinced that the verdict is so excessive as to suggest passion or prejudice. *See Nienstedt v. Wetzel, id.* The size of the award here is not so unreasonable as to show or suggest passion or prejudice and we will not interfere with the jury's deter-

mination which has also been approved by the trial court.

Finally the appellant contends that the odd amount, $52,387.49, is the result of a quotient verdict. By simple arithmetic he suggests the figure is the result of dividing $419,099.99 by eight (jurors). No evidence supports this conclusion and we refuse to make such an inference.

Affirmed.

HATHAWAY and HOWARD, JJ., concur.