781 P.2d 1015

**Thomas Allen OLSON, an individual, Plaintiff–Appellee,**

v.

**Jerry H. WALKER and Rachelle Walker, husband and wife, Defendants–Appellants.**

**No. 1 CA–CV 88–316.**

Court of Appeals of Arizona, Division 1, Department D.

June 27, 1989.

Review Denied Nov. 21, 1989.*

* Moeller, J., of the Supreme Court, voted to grant review as to Issues B, C and D.

Harrison, Harper, Christian & Dichter, P.C. by Douglas L. Christian and Gregg H. Temple, Phoenix, for defendants-appellants.

Berry & Martori by Frederick C. Berry, Jr., Phoenix, for plaintiff-appellee.

## OPINION

GRANT, Chief Judge.

This appeal primarily concerns the award of punitive damages in a personal injury action. A secondary issue concerns the trial court's refusal to strike certain expert testimony. For the reasons explained below, we affirm.

## FACTS

We view the facts most favorably to upholding the jury verdict. *Venerias v. Johnson*, 127 Ariz. 496, 622 P.2d 55 (App. 1980). Thomas Allen Olson and Jerry H. Walker were involved in a motor vehicle accident at approximately 6:30 p.m. on October 30, 1985. Immediately prior to the accident, Walker spent approximately two hours at a bar with his accountant and one other acquaintance. During that time, the three men played pool and drank at least two pitchers of beer between approximately 4:30 p.m. and 5:30 p.m. When they left the bar, the accountant drove to a community college where he taught an accounting class. Walker drove east on Bell Road, which has a posted speed limit of 40 miles per hour. A witness testified that Walker was traveling at least 50–55 miles per hour, that he swerved in and out of traffic, that he cut the witness off, and that he lost control of his vehicle.

Meanwhile, Olson was driving his motorcycle to pick up a pizza. He was almost stopped in the left-hand turn lane on Bell Road, waiting for traffic to clear so he could turn left, when Walker's vehicle rear-ended him. Walker did not immediately stop, but when he did get out of his car, he staggered, smelled strongly of alcohol, and had trouble standing. He had bloodshot eyes and slurred his speech. A witness testified that Walker attempted to leave the scene, but was stopped by two bystanders. Walker was arrested for driving while intoxicated. *See* A.R.S. § 28–692. As a result, he ultimately paid a fine of $372.50 and had his driver's license temporarily suspended.

Based upon his blood-alcohol level approximately one hour after the accident, an expert toxicologist testified that Walker's blood-alcohol level at time of the accident was .155 percent. He also testified that Walker must have consumed ten or more twelve-ounce cans of beer during the one-hour period he was drinking. There was also disputed testimony that Walker took 20 mg. of Valium approximately one-half hour before the accident. The toxicologist testified that the Valium and alcohol would have intensified the effect of each other.

A jury trial resulted in an award of $133,000 compensatory damages and $100,-000 punitive damages to Olson. After the trial court denied his motion for a new trial or, in the alternative, remittitur, Walker brought this appeal.

## ISSUES

Walker raises the following issues:

(1) Whether the evidence at trial was insufficient to warrant punitive damages;

(2) Whether the $100,000 punitive damages award is excessive and the result of passion and prejudice;

(3) Whether the punitive damages award is unconstitutional because it violates Walker's due process rights, is an excessive fine, or constitutes double jeopardy; and

(4) Whether the trial court erred by refusing to instruct the jury to disregard certain testimony regarding arthritic changes in Olson's lower back.

Additional facts will be added as necessary for the discussion of each issue.

# I. PUNITIVE DAMAGES AWARD

Walker argues that the evidence at trial was insufficient to warrant a punitive damages instruction. Specifically, he argues that there was no evidence that Walker intended to injure Olson or that he knowingly and consciously disregarded a substantial risk of harm to Olson or others.

Although an award of punitive damages should be upheld if there is any reasonable evidence to support it, an award may be reversed when the punitive damages issue has been submitted to the jury on slight and inconclusive evidence. *Filasky v. Preferred Risk Mutual Ins. Co.*, 152 Ariz. 591, 599, 734 P.2d 76, 84 (1987). To properly analyze Walker's argument, we must examine the punitive damages standard that has evolved in recent years and then determine whether there was more than slight or inconclusive evidence to warrant an award.

## A. *Punitive Damages Standard*

■ Punitive damages are awarded primarily to punish the wrongdoer and deter others from similar conduct. *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986). The award of punitive damages is limited to situations where these objectives can be furthered. *Gurule v. Illinois Mutual Life and Casualty Co.*, 152 Ariz. 600, 601, 734 P.2d 85, 86 (1987). Punitive damages are therefore awarded only where the defendant's wrongful conduct is the result of an "evil mind," something more than the mere commission of a tort. *Linthicum*, 150 Ariz. at 330, 723 P.2d at 679. Accordingly, the primary inquiry is based on the wrongdoer's state of mind or attitude. *Id.* An evil mind is found where the defendant intended to injure the plaintiff, or where the defendant, not intending to cause injury, "consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986). An evil mind can be inferred when the defendant's conduct is so outrageous or egregious that it can be assumed he intended to injure or that he consciously disregarded the substantial risk of harm created by his conduct. *Gurule*, 152 Ariz. at 602, 734 P.2d at 87; *Rawlings*, 151 Ariz. at 162–63, 726 P.2d at 578–79.

The Arizona Supreme Court first announced the standard described above in insurance bad-faith cases. *See Rawlings; Linthicum.* The court correspondingly imposed a more stringent standard of proof, thereby allowing the recovery of punitive damages only upon clear and convincing evidence of the defendant's evil mind. *Linthicum*, 150 Ariz. at 332, 723 P.2d at 681; *see also Gurule.* These standards have since been applied to other types of cases, including products liability, *see Volz v. Coleman Co.*, 155 Ariz. 567, 748 P.2d 1191 (1987), and personal injury actions. *See Ranburger v. Southern Pacific Transportation Co.*, 157 Ariz. 551, 760 P.2d 551 (1988).

■ Previously, the question of punitive damages against intoxicated drivers was allowed to go to the jury upon a showing of gross or wanton negligence. *E.g., Smith v. Chapman*, 115 Ariz. 211, 564 P.2d 900 (1977); *Rustin v. Cook*, 143 Ariz. 486, 694 P.2d 316 (App.1984). The current standard for awarding punitive damages developed by recent case law applies to these types of cases and must be utilized in determining whether punitive damages are recoverable in this case.

## B. *Sufficiency of the Evidence*

We must next determine whether the evidence was clear and convincing that Walker acted with an "evil mind," in that he consciously pursued a course of conduct knowing it created a substantial risk of significant harm to others.

In support of the punitive damages award, Olson points to Walker's testimony that he knew that it was dangerous to drive while intoxicated, and that intoxicated drivers create a substantial risk of harm to others. Olson also refers us to the following evidence:

(1) Walker's intoxilyzer test results were .14 and .15 percent one hour after the

accident. An expert toxicologist testified that Walker consumed at least ten beers during the hour he admits he was drinking and that his blood alcohol level would have been at least .155 percent at the time of the accident;

(2) There was testimony that Walker took 20 mg. of Valium 25 minutes before the accident. The Valium and alcohol would have enhanced the effects of each other;

(3) Walker drove recklessly before the accident and caused another driver to take evasive action;

(4) Walker was speeding at the time of the accident;

(5) Walker did not brake or take other evasive action until after he collided with Olson's motorcycle;

(6) Walker attempted to flee the scene and was physically restrained by two bystanders; and

(7) Walker was agitated after he was arrested and stated that he needed more Valium.

Although Olson suggests that a determination of voluntary intoxication is sufficient to warrant a punitive damages instruction, he claims there is abundant additional evidence showing Walker's "evil mind" and the punitive damages award should therefore be affirmed.

Walker, on the other hand, contends that a plaintiff must show more than defendant's voluntary intoxication; he must show that when the defendant got into his car to drive, he either *knew* he was too intoxicated to drive safely, or that he deliberately became intoxicated knowing he would later drive. Walker points to his own testimony that he did not feel that his driving ability was impaired when he left the bar and that he did not *know* he might be creating a substantial risk of significant harm to others by driving. There is no evidence, he claims, that he became intoxicated knowing he would later create a substantial risk of harm to others by driving. He points to undisputed testimony that he met with his two companions to discuss business and to relax after work, as opposed to becoming intoxicated, and that one of his companions taught an accounting class after consuming the same amount of alcohol as Walker.

■ We do not agree with Walker's ultimate conclusion that there was no evidence to support a punitive damages jury instruction. Walker ignores the fact that an evil mind can be inferred by egregious or outrageous conduct. We believe there was sufficient evidence that Walker's conduct was so outrageous that an evil mind could be inferred.

Preliminarily, we note that we are looking beyond the undisputed evidence that Walker was negligent, or even grossly negligent, as he candidly admits. Viewing the evidence most favorably to supporting the verdict, Walker's blood-alcohol level indicated that he drank at least ten beers within the one-hour period he admits he was drinking. This large amount of alcohol in a short period of time supports an inference that he intended to become intoxicated or at least knew that would be the result. In addition, he took 20 mg. of Valium. Even assuming Walker did not know he was intoxicated when he sat behind the wheel of his car, he does not claim he did not know he had been drinking. Between the drinking and the Valium, it can be readily inferred that Walker disregarded the fact that his ability to drive safely was impaired, thereby creating a substantial risk of significant harm to others. Walker drove to the bar, and he does not suggest he intended to leave by another method. When he left, he drove recklessly and was speeding in the middle turn lane, instead of driving cautiously in an attempt to minimize the risk to others.

This evidence amply supports a finding of an evil mind. To hold otherwise based on Walker's testimony that he neither knew of nor consciously disregarded the substantial risk he was creating would be tantamount to determining punitive damages exclusively on a defendant's own testimony of his lack of an evil mind, even when his conduct indicates otherwise. The mental states of intent and knowledge can-

not be disproved on a defendant's mere denial of them.

It is sufficient that Walker *should* have known that his conduct was so egregious that it created a substantial risk of harm to others. *See Linthicum,* 150 Ariz. at 330, 723 P.2d at 679 ("It is only when the wrongdoer *should* be consciously aware ... that his conduct is so outrageous, oppressive or intolerable....") (emphasis added). In *White v. Mitchell,* 157 Ariz. 523, 759 P.2d 1327 (App.1988), this court upheld a punitive damages award against a truck driver based upon testimony that an experienced driver *would* have known the brakes were unsafe. We concluded that even though the evidence was circumstantial, the jury could have found that the driver knew the truck was unsafe, giving rise to a substantial risk of serious injury to other drivers and pedestrians. *Id.* at 529, 759 P.2d at 1333. In this case, a person who knows it is unsafe to drink and drive would have known it was unsafe to drive after drinking ten beers in an hour.

Walker's reliance on case law from other jurisdictions is misplaced. For example, he cites *Baker v. Marcus,* 201 Va. 905, 114 S.E.2d 617 (Ct.App.1960) in which a Virginia court refused to sustain a punitive damages award against an intoxicated driver. The reason for the court's holding, however, was that the facts did not indicate the accident was the result of the defendant's intoxication, as opposed to simple negligence when she momentarily took her eyes off the road. *Id.* at 910, 114 S.E.2d at 621. The defendant's degree of intoxication was considered "borderline" and she was only charged with reckless driving. *Id.* at 907, 114 S.E.2d at 619; *see also Miskin v. Carter,* 761 P.2d 1378 (Utah 1988). Similarly, in *Detling v. Chockley,* 70 Ohio St.2d 134, 139, 436 N.E.2d 208, 212 (1982), the court held that punitive damages were not recoverable against a drunk driver where there were *no surrounding circumstances* demonstrating the malice required to impose punitive damages. In *Gesslein v. Britton,* 175 Kan. 661, 266 P.2d 263 (1954), the court refused to allow a claim for punitive damages based on the defendant's intoxication

alone because the plaintiff had failed to allege any facts showing "gross and wanton negligence." The fact that the defendant drove while intoxicated was insufficient standing alone to award punitive damages. *Id.* at 664, 266 P.2d at 265.

By contrast, here there was clear and convincing evidence that Walker's intoxication was well beyond borderline and that the accident occurred solely because he was intoxicated. In addition, Walker had taken Valium and was driving recklessly in excess of the speed limit. Intoxication alone, in the absence of other compelling circumstances, may not warrant punitive damages. *E.g., Biswell v. Duncan,* 742 P.2d 80 (Utah Ct.App.1987). In this case, however, additional circumstances beyond intoxication were clearly shown. The trial court properly allowed the question of punitive damages to go to the jury.

## II. AMOUNT OF PUNITIVE DAMAGES

Walker next argues that the $100,000 punitive damages award is excessive and that the jury acted out of passion or prejudice. Such an award, he argues, will destroy him financially. At the time of trial, Walker claimed his business was in bankruptcy, that he supported his wife and two children on an annual income of $38,000, that he had about $4,000 in the bank, and after paying bills had approximately $500 left over every month. He contends that $100,000 is well beyond the average working person's ability to pay. He points out that, even assuming he had $500 to pay at the end of every month, it would take him nearly seventeen years to pay the award, excluding any interest.

Olson responds that although Walker's employer was in bankruptcy, there was no evidence that Walker had ever filed bankruptcy. He also points out that Walker's income the year previous to trial was $44,356 and that Walker owns his own home.

As a general rule, the amount of a punitive damages award is within the fact finder's discretion and will not be disturbed on appeal, unless it is so unreasonable that it is the product of passion or prejudice.

*Nielson v. Flashberg,* 101 Ariz. 335, 341, 419 P.2d 514, 520 (1966); *Nienstedt v. Wetzel,* 133 Ariz. 348, 357, 651 P.2d 876, 885 (App.1982). The test is whether the verdict is "so manifestly unfair, unreasonable and outrageous as to shock the conscience of the Court." *Acheson v. Shafter,* 107 Ariz. 576, 579, 490 P.2d 832, 835 (1971) (citing *Young Candy & Tobacco Co. v. Montoya,* 91 Ariz. 363, 370, 372 P.2d 703, 707 (1962)); *see also Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 501, 733 P.2d 1073, 1084, *cert. denied,* 484 U.S. 874, 108 S.Ct. 212, 98 L.Ed.2d 177, *reh'g denied,* 484 U.S. 972, 108 S.Ct. 477, 98 L.Ed.2d 414 (1987). The amount of the award alone is insufficient evidence that a jury acted with passion or prejudice. *Hawkins,* 152 Ariz. at 501, 733 P.2d at 1084.

■ One factor that may be considered in awarding punitive damages is the defendant's wealth. The wealthier the defendant, the greater the amount of the award needed to punish him. *Id.* At the same time, however, the award "must not financially kill the defendant." *Id.; see also Maxwell v. Aetna Life Ins. Co.,* 143 Ariz. 205, 219, 693 P.2d 348, 362 (App.1984).

Another factor the jury can consider is the nature of the defendant's conduct. *Hawkins,* 152 Ariz. at 502, 733 P.2d 1085. Thus, "the more reprehensible the defendant's conduct and the more serious the harm likely to occur, the larger the appropriate punishment." *Id.*

In support of his contention that the $100,000 punitive damages award will financially kill him, Walker relies on *Hawkins,* in which the court determined that a $3.5 million punitive damages award was not excessive because it represented only ¹⁄₂₅ of one percent of the corporate defendant's total assets and net income of approximately 3½ days. In contrast, the $100,000 award against Walker represents approximately two and one-half times his *gross* annual income. Division 2 of this court, however, upheld a punitive damages award of more than $53,000 against a defendant with an annual income of $22,000, who lived from paycheck to paycheck. *Rustin v. Cook,* 143 Ariz. 486, 694 P.2d 316

(App.1984). The court concluded that the size of the award was not so excessive as to show passion or prejudice and decided that the court would not interfere with the jury's determination, which had also been approved by the trial court. *Id.* at 491, 694 P.2d at 321; *see also Puz v. McDonald,* 140 Ariz. 77, 79, 680 P.2d 213, 215 (App.1984) (an award in excess of the defendant's assets is not sufficient grounds to set it aside).

■ Turning to this case, evidence was presented concerning Walker's occupation, income, and assets. Presumably, the jury considered this evidence, as well as the evidence regarding Walker's conduct and the strong likelihood that it could (and did) result in serious harm. Taking these factors into consideration, the jury could have concluded that Walker's conduct was so egregious that a large punitive damages award was necessary to punish him. A high award also serves the public by deterring others from similar conduct, a concern of paramount importance, as the problem of intoxicated drivers has grown in recent years.

We cannot agree with Walker's contention that a $100,000 punitive damages award "shocks the conscience." Undeniably, it is a steep punishment not easily absorbed by Walker. However, the purpose of punitive damages—to punish the wrongdoer and deter others—would be little furthered by an award easily paid by a defendant. *See Hawkins,* 152 Ariz. at 497, 733 P.2d at 1080 ("[T]he goals of punishment and deterrence would be circumvented if the financial position of the defendant allowed it to comfortably absorb the award"). The growing public concern and increasing deaths and injuries caused by intoxicated drivers justify an award which will hopefully deter others from similar conduct.

## III. CONSTITUTIONAL CONSIDERATIONS

■ Walker alleges that the punitive damages award must be overturned because it is unconstitutional on three

grounds. In response, Olson suggests that these arguments, first raised in Walker's motion for new trial, are untimely and this court should refuse to consider them. Constitutional arguments, however, may be raised at any time, although it is within the court's discretion whether to consider them. *See, e.g., Hawkins*, 152 Ariz. at 503, 733 P.2d at 1086 (Arizona Supreme Court declined to consider constitutional questions first raised after oral argument on petition for review, although recognizing that it had the discretion to consider constitutional issues raised for the first time on appeal). In this case, the constitutional questions were considered by the trial court, albeit after trial. These questions were timely raised, and we therefore address them.

### A. Due Process

A person may be punished or deprived of property only after due process has been accorded. U.S. Const. amend. V and XIV; Ariz. Const. art. II, § 4; *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Large v. Superior Court*, 148 Ariz. 229, 235, 714 P.2d 399, 405 (1986). In Arizona, due process requires that *"government* deprivation of a liberty interest be both substantially related to the purpose it is to serve and not excessive in response to the problem addressed." *Large*, 148 Ariz. at 236-37, 714 P.2d at 406-07 (emphasis added; citations omitted). Quoting from an earlier Arizona Supreme Court case, the *Large* court stated:

> Due process, when applied to substantive rights, is interpreted to mean the state is without right to deprive a person of life, liberty or property by an act that has no reasonable relation to any proper governmental purpose, or which is so far beyond the necessity of the case as to be an arbitrary *exercise of governmental powers.*

*Id.* at 237, 714 P.2d at 407 (emphasis added) (quoting *Valley Nat'l Bank v. Glover*, 62 Ariz. 538, 553, 159 P.2d 292, 298-99 (1945)).

Because one of the acknowledged purposes of punitive damages is to punish the wrongdoer, Walker contends he is entitled to procedural due process safeguards before punitive damages can be imposed against him. The method by which punitive damages are awarded, he argues, arbitrarily deprives defendants of their property because neither proof beyond a reasonable doubt nor a unanimous verdict is required; there are no limits upon the amount a jury may award; and the jury is not informed to consider criminal sanctions already imposed.

Walker correctly asserts that neither the U.S. Supreme Court nor any Arizona court has decided whether more stringent procedures are necessary in private civil punitive damages actions to satisfy due process. The U.S. Supreme Court has stated, however, that "the Constitution presents no general bar to the assessment of punitive damages in a civil case...." *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 159, 87 S.Ct. 1975, 1994, 18 L.Ed.2d 1094, 1113 (1967). More recently, it refused the opportunity to address the constitutionality of punitive damages awards in civil actions because the argument was not properly raised in state court, although it acknowledged the issue as "a question of some moment and difficulty." *Bankers Life & Casualty Co. v. Crenshaw*, 486 U.S. 71, 79, 108 S.Ct. 1645, 1651, 100 L.Ed.2d 62, 73 (1988); *see also Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (constitutional questions under due process and the Eighth Amendment concerning punitive damages are important issues which, in an appropriate setting, must be resolved).

Other jurisdictions that have considered the constitutionality argument have rejected it on the grounds that civil actions, even when punitive in nature, do not require the constitutionally-mandated safeguards provided in criminal actions. *See, e.g., Downey Savings & Loan Ass'n v. Ohio Casualty Ins. Co.*, 189 Cal.App.3d 1072, 234 Cal.Rptr. 835 (1987), *cert. denied*, 486 U.S. 1036, 108 S.Ct. 2023, 100 L.Ed.2d 610 (1988); *Toole v. Richardson–Merrell, Inc.*, 251 Cal.App.2d 689, 60 Cal.Rptr. 398 (1967); *Unified School Dist. No. 490 v. Celotex Corp.*, 6 Kan.App.2d 346, 629 P.2d 196 (1981); *see also Sturm, Ruger & Co. v.*

*Day,* 594 P.2d 38 (Alaska 1979) (court rejected defendant's claim that punitive damage award violated due process because of lack of standards to determine defendant's culpability, in the "fault-free" contract of strict products liability and in the amount to be awarded which resulted in an arbitrary application).

In *Downey,* the defendants argued that punitive damages awarded in a civil action unaccompanied by the safeguards required in criminal proceedings violated the due process clause of the U.S. Constitution. The court concluded that because civil, rather than criminal, rules of procedure applied, an award of punitive damages under the civil rules of procedure did not violate any of the defendant's constitutional rights. 189 Cal.App.3d at 1101, 234 Cal. Rptr. at 851–52. The court based its decision, in part, on the defendant's failure to identify the safeguards involved. *Id.* An earlier California case, however, had rejected the same argument, which was specifically based upon the number of peremptory challenges, the lack of a requirement for a unanimous verdict and the denial of a presumption of innocence. *Toole,* 251 Cal. App.2d at 716–17, 60 Cal.Rptr. at 417–18. The court concluded:

> [R]espondent's action, although it demanded punitive damages as part of the relief sought, was purely civil in nature. The constitutional guarantees which appellant says it was denied are applicable in criminal cases but are not controlling in purely civil actions such as the case before us. It follows that the award of penal damages made under civil rules of procedure did not violate any constitutional right of appellant.

251 Cal.App.2d at 717, 60 Cal.Rptr. at 418. A Kansas court similarly held that "[t]he imposition of punitive damages awards, although penal in nature, does not approach the severity of criminal sanction and does not demand the same safeguards as do criminal prosecutions." *Celotex Corp.,* 6 Kan.App.2d at 356, 629 P.2d at 206 (citation omitted).

■ Additionally, we believe it is significant that no *governmental* action resulted in the taking of Walker's property. Obviously, a state or governmental interest is served when a wrongdoer is punished and others are deterred from similar conduct. However, for due process to apply, the government must have exercised its power to further that interest, which, in this case, it did not do. This was a civil action between private parties. A jury awarded the punitive damages without any involvement by the state, other than that the award was attained through the use of the state court system. This does not, in our view, amount to governmental action.

Walker alleges that the standard for awarding punitive damages in Arizona is unclear and that there is no meaningful definition of proscribed conduct. In light of the recent evolution of punitive damages cases resulting in the application of more stringent standards and clear and convincing proof, this argument falls short. Obviously, it is not possible to list every behavior or action that may result in punitive damages. Clearly, however, *egregious* behavior with a substantial risk of significant harm to others may result in punitive damages. We do not agree with Walker's inference that the deterrent effect of punitive damages does not "weigh heavily." The deterrent effect is one of the primary justifications for punitive damages.

■ We have found no cases which hold that constitutional due process safeguards apply to civil actions involving punitive damages. For this and the other reasons explained above, we conclude the required safeguards in criminal proceedings are not constitutionally required in civil actions involving punitive damage claims. The punitive damage award does not violate due process.

### B. Eighth Amendment—Excessive Fine

■ The Eighth Amendment to the U.S. Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." Walker argues that this amendment renders the punitive damage award against him unconstitutional as an excessive fine. The U.S. Supreme Court has

clearly proclaimed that the Eighth Amendment does not apply to civil proceedings:

> An examination of the history of the [Eighth] Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes.

*Ingraham,* 430 U.S. at 665, 97 S.Ct. at 1408–09, 51 L.Ed.2d at 725; *see also Downey,* 189 Cal.App.3d at 1101, 234 Cal.Rptr. at 851 ("[T]he Eighth Amendment applies only to criminal actions, not to purely civil penalties, as involved here."); *Palmer v. A.H. Robins Co.,* 684 P.2d 187, 217 (Colo. 1984); *Celotex Corp.,* 6 Kan.App.2d at 356, 629 P.2d at 206. The award is not unconstitutional under the Eighth Amendment.[1]

### C. *Double Jeopardy*

Double jeopardy precludes a person from being put in "jeopardy" for the same offense twice. U.S. Const., amend. V; Ariz. Const. art. II, § 10. Walker contends that the criminal proceedings and subsequent civil proceedings resulting in a criminal fine and punitive damages award, respectively, put him in jeopardy twice for the same offense.

■ The U.S. Supreme Court has held that "the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish *criminally,* for the same offense." *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 236–37, 93 S.Ct. 489, 492, 34 L.Ed.2d 438, 442 (1972) (quoting *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922 (1938) (emphasis added)). *One Lot Emerald* involved a civil forfeiture action taken by the federal government after the defendant was acquitted of criminal charges that he attempted to smuggle certain items into the United States. The U.S. Supreme Court concluded that "Congress may impose both a criminal and a civil sanction in respect to the same act or omission." *Id.; see also Murphy v. United States,* 272 U.S. 630, 47 S.Ct. 218, 71 L.Ed. 446 (1926) (acquittal of nuisance charges

not a bar to subsequent civil lawsuit to abate same nuisance). Here, by contrast, the civil action was pursued by a private party, as opposed to the governmental body that initiated and pursued the criminal proceedings. *See also Celotex Corp.,* 6 Kan.App.2d at 356, 629 P.2d at 206 (double jeopardy does not apply to civil suits for punitive damages); *Biswell v. Duncan,* 742 P.2d 80 (Utah Ct.App.1987). We conclude that the double jeopardy argument is without merit.

### IV. EXPERT TESTIMONY

Walker argues that the trial court should have instructed the jury to disregard expert testimony regarding arthritic changes to Olson's back or should have declared a mistrial. Its failure to do either entitles Walker to a new trial. The basis for his complaint is that Dr. Lise LaBarre, relying on an x-ray undisclosed before trial, testified at trial that Olson suffers from arthritis, a permanent condition, in his back.

Prior to trial, Olson primarily relied on Dr. LaBarre's opinion that he would eventually develop arthritis to support his claim of permanent back injury. Walker, however, intended to rely on one of Dr. LaBarre's medical reports suggesting that Olson's back was getting better, as well as certain portions of her deposition testimony. He claims he was prejudiced at trial because her testimony that Olson definitely had arthritis substantially expanded the extent of Olson's injuries. He was surprised and unprepared for this testimony. The trial court, he argues, erred by refusing to strike the testimony or declaring a mistrial.

Dr. LaBarre testified at trial that she had examined Olson three days before her testimony and that x-rays taken at that time confirmed her previous prognosis that Olson would develop arthritis at the point of injury. Walker objected to this testimony, as well as the introduction of the x-rays, on the ground that they were not timely disclosed before trial. Although the

---

1. The United States Supreme Court heard oral argument on April 18, 1989, in *Browning–Ferris Industries v. Kelco,* 88–556, which raises the issue of whether a $6 million punitive damages award violates the Eighth Amendment prohibition against excessive fines.

trial court agreed, it denied the motion to strike because the objection was tardy. It did, however, preclude further testimony on the current arthritis "[a]s subsequently revealed in the examination and x-rays of January 18...." The court denied Walker's motion for mistrial.

The effect of these rulings was to allow testimony concerning Dr. LaBarre's previous prognosis that Olson would eventually develop arthritis in his back, as disclosed in her medical reports and her deposition. Further testimony that the prognosis had been objectively confirmed by x-ray, however, was disallowed. As a result, Olson's counsel made no further reference to the January 18, 1988, examination or x-rays.

In defense of the trial court's rulings, Olson points out that Walker knew long before trial that Olson claimed he had a permanent back injury and that Dr. LaBarre believed arthritis would develop and had recommended on several occasions that x-rays be taken to confirm her prognosis.

■ The trial court has broad discretion in admitting or rejecting evidence at trial. *Ofstedahl v. City of Phoenix,* 129 Ariz. 85, 88, 628 P.2d 968, 971 (App.1981). Its ruling will not be disturbed absent an abuse of discretion. *Circle K Corp. v. Rosenthal,* 118 Ariz. 63, 67, 574 P.2d 856, 860 (App. 1977). In light of the previously disclosed reports and deposition testimony reflecting Dr. LaBarre's opinion that Olson would eventually suffer arthritis, we cannot say that the trial court abused its discretion by refusing to strike the single reference to the undisclosed x-rays. *But see Ries v. McComb,* 25 Ariz.App. 554, 545 P.2d 65 (1976) (trial court abused its discretion by allowing previously undisclosed witness to testify and by admitting undisclosed exhibit).

Walker's claim of surprise, in our view, is unfounded. Dr. LaBarre's opinion did not change; it was merely confirmed. Moreover, Dr. LaBarre suggested several times in her reports that x-rays would confirm her prognosis. Walker points to no evidence contradicting this prognosis. A defense to Dr. LaBarre's opinion that arthritis *would* in all likelihood develop, and

that it *did* develop, would not differ much. In addition, nothing in the record suggests that Olson's failure to disclose the results of the January 18 examination and x-rays was deliberate. *See Greco v. Manolakos,* 24 Ariz.App. 490, 539 P.2d 964 (1975) (failure to update interrogatories regarding medical expenses did not warrant sanction of excluding all evidence pertaining to expenses because it did not prejudice defendant and omission was not willful).

Finally, although the trial court did not allow any further references to the recent examination or x-rays, it denied Walker's motion to strike, at least in part, because the objection was tardy. The record, however, is unclear because a bench conference immediately following the testimony in question was not recorded. Under these circumstances, we cannot conclude the trial court abused its discretion, and we therefore affirm its ruling.

## CONCLUSION

In conclusion, there was sufficient evidence to support the punitive damage instruction to the jury. The resulting award was not excessive. We reject Walker's arguments that the punitive damage award is unconstitutional. Finally, the trial court did not err by refusing to strike the portion of Dr. LaBarre's testimony of which Walker complains, or by refusing to declare a mistrial.

The judgment of the trial court is affirmed.

SILVERMAN, J., concurs.

NOTE: The Honorable BARRY G. SILVERMAN of the Maricopa County Superior Court, State of Arizona, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Ariz. Const. Art. VI, § 3.

GERBER, Judge, dissenting:

I dissent from that portion of the majority opinion upholding the $100,000 punitive damage award. While there is no showing of passion or prejudice, the award is simply excessive for this wrongdoer and, in a larg-

er sense, for all of us. I would grant a remittitur as I believe the trial court should have done under A.R.S. 12–2104, to reduce that sum to something in the neighborhood of $50,000.

*Hawkins v. Allstate Insur. Co.*, 152 Ariz. 490, 501, 733 P.2d 1073, 1084 (1987) counsels that the wealthier a defendant, the greater may be the punitive damages; the obverse of this principle is that the less wealthy a defendant, the lower should be the punitive damages. *Hawkins* also advises that punitive damages should not destroy an individual. In my opinion, that will happen here. The destruction will go beyond this culpable individual to innocent family members and may well come back to bite society—all of us—in the heel.

This defendant is a young, relatively newly married man with a non-employed wife, with two children who, at trial time, were five years and one month old respectively. He had lost his job in bankruptcy proceedings. His income in the year in question was $38,000; in the prior year it was approximately $44,000. He is the sole support of his family. In addition to suffering compensatory damages of $133,000, he is now saddled with an additional $100,000 in punitive damages.

The $100,000 punitive damage award is two to two and one-half times his family's annual income. It is not speculative to envision that its effects go well beyond punishing simply this defendant. For him to pay off the $100,000 out of savings, even at the harsh rate of $500 per month, without any payment of interest, would require 17 years; when interest is added, it could take almost twice as long, possibly his entire remaining life. This punishment spreads beyond this wrongdoer; it punishes his three innocent family members as well and could readily deny or seriously impair education for the children, force the wife or husband to work second or third jobs, cause deprivation of basic family needs, and put the marriage itself to the test.

The law's deterrent desires regarding this defendant's drinking problem need be balanced against other social values. Deterrence needs to be measured against the long term effects upon society at large when the debilitation of this family taxes all of us on the rebound. It little profits us as a society to deter so mightily as to cause greater disasters. While I have not a shred of sympathy for this defendant's conduct and find some punitive damages well warranted, I regret the court's failure to consider the larger picture. Pulverizing defendants for outrageous conduct can lead to social fall-out beyond the punitive satisfaction of the moment. It is a narrow view to consider simply the true but worn refrain of "sending a message" of deterrence; we also need to embrace the larger view of the effects of disproportionate punitive damage assessments on a family and our larger society when its members are destroyed by poverty, debt, or even unyielding cynicism. Unfortunately, in my opinion, the arctic winter of punishment has here encroached on prudence, leaving one to ponder Clausewitz's comment that, at times, the law becomes plunder without the excuse of war.