15 F.3d 1095
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Demetrio Bejarano VILLAMAN, Surviving parent of the deceased
Santana Atienzo Bejarano; Teresa Atienzo Perez,
Surviving parent of the deceased,
Santana Atienzo Bejarano,
Plaintiffs-Appellees,
v.
Presley SCHEE, Defendant-Appellant.
Demetrio Bejarano VILLAMAN, Surviving parent of the deceased
Santana Atienzo Bejarano; Teresa Atienzo Perez,
Surviving parent of the deceased,
Santana Atienzo Bejarano,
Plaintiffs-Appellees,
v.
Presley SCHEE, Defendant,
and
Sad Inc., a Louisiana corporation dba Sad Trucking Inc.;
Shelton A. Daniel, Jr., Defendants-Appellants.
 Nos. 92-15490, 92-15562.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 12, 1993.
Decided Jan. 10, 1994.
 
 Before: WALLACE, Chief Judge; D.W. NELSON and O'SCANNLAIN, Circuit Judges.
 
 
 1
 Memorandum*
 
 
 2
 In late August 1987, Presley Schee, a truck driver for SAD, Inc., was driving a tractor/trailer loaded with lumber and weighing between 70,000 and 80,000 pounds on an Arizona highway. He fell asleep at the wheel and drove into a pickup truck that had parked alongside the road after developing engine troubles. Five people were killed, and others were injured.
 
 
 3
 * At the time the accident occurred, Schee had been driving well over the maximum number of hours allowed by law. Schee had been encouraged to do so by his boss, Shelton Daniel, the owner of SAD.
 
 
 4
 Among those killed at the accident site was Santana Atienzo Bejarano, a Mexican citizen. Bejarano was a thirty-three year old agricultural worker who permanently resided with his wife, children, and parents on a farm in Sinaloa, Mexico. Bejarano provided substantial support to his parents, Villaman and Perez.
 
 
 5
 Bejarano's widow, Flora Nolasco de Bejarano, filed a wrongful death action in Arizona state court against Schee and SAD on her own behalf and on behalf of her young children. A settlement was reached in July 1989, and final judgment was entered in November 1989. In August 1989, Bejarano's parents, filed this suit, a separate wrongful death action against Schee, SAD, and Daniel, in Arizona state court. The complaint was not served until December 1989, after judgment was entered in Flora Bejarano's suit. This action was removed to federal court. Subsequently, Villaman, Bejarano's father, died, and Perez became the sole plaintiff.
 
 
 6
 Summary judgment was granted in favor of Perez on the issue of SAD's and Schee's liability. A trial was held to determine Daniel's liability and damages against all defendants. The jury found that Daniel had been negligent and awarded Perez $350,000 in compensatory damages, assessing Schee's fault at 20% and Daniel's at 80%. The jury also awarded Perez $50,000 in punitive damages against Schee and $500,000 each against Daniel and SAD. Schee, Daniel, and SAD appeal.
 
 II
 
 7
 * In Arizona, a cause of action for wrongful death is purely statutory in origin. Bowslaugh v. Bowslaugh, 617 P.2d 25, 27 (Ariz.1979). Thus, determining who may bring a wrongful death action and under what circumstances the action may be brought requires interpretation of Arizona's wrongful death statute, section 12-612 of the Arizona Revised Statutes.
 
 
 8
 The appellants argue that Perez is not a proper plaintiff under section 12-612. This argument is without merit. The plain language of section 12-612(B) gives parents the right to bring suit. "There is no question but that [Perez] is a proper party plaintiff under [section] 12-612(B)." Brumbaugh v. Pet, Inc., 628 P.2d 49, 51 (Ariz.App.1981).
 
 
 9
 The appellants next argue that Perez's action is barred by the "one action rule." Consistent with the law in many other states, section 12-612(A) requires all of the heirs of a decedent to join their claims for wrongful death against a single defendant in one action. Nunez v. Nunez, 545 P.2d 69, 73 (Ariz.App.1976). Such actions are joint, single and indivisible. Reed v. Frey, 458 P.2d 386, 390 (Ariz.Ct.App.1969) (citing Cross v. Pacific Gas & Elec. Co., 388 P.2d 353 (Cal.1964)).
 
 
 10
 In stating that an action for wrongful death is joint, it is meant that all heirs should join or be joined in the action and that a single verdict should be rendered for all recoverable damages; when it is said that the action is single, it is meant that only one action for wrongful death may be brought whether, in fact, it is instituted by all or only one of the heirs, or by the personal representative of the decedent as statutory trustee for the heirs; and when it is said that the action is indivisible, it is meant that there cannot be a series of suits by heirs against the tortfeasor for their individual damages.
 
 
 11
 Cross, 388 P.2d at 355.
 
 
 12
 Although no Arizona court has had occasion to decide whether a beneficiary who was omitted from the original suit may bring a subsequent action against the defendant after final judgment has been entered in the original suit, courts in states with analogous statutes have concluded that subsequent actions are generally barred after final judgment has been entered in the original suit. See, e.g., Canavin v. Pacific Southwest Airlines, 148 Cal.App.3d 512, 529-30 (1983); Mayerhoff v. Kaiser Foundation Health Plan, Inc., 71 Cal.App.3d 803, 805 (1977). Arizona courts have often followed California law in interpreting Arizona's wrongful death statute, see, e.g., Nunez, 545 P.2d at 72-73; there is no reason to believe that the Arizona Supreme Court would depart from California law here.
 
 
 13
 In certain circumstances, courts have recognized exceptions, allowing an omitted heir to bring a subsequent action. We are unpersuaded, however, that the Arizona Supreme Court would recognize an exception in the circumstances of this case. This is not a case in which the first action was brought by a party who was not a rightful heir under the statute, cf. In re Milliman, 415 P.2d 877, 887 (Ariz.1966); Davis v. Robinson, 123 P.2d 894, 895 (Cal.App.1942); nor is it a case in which the defendants knew that other beneficiaries existed but made no effort to have them joined in the suit, cf., e.g., Hogan v. Hermann, 623 P.2d 900, 904 (Idaho 1980); Valdez v. Smith, 212 Cal.Rptr. 638, 643 (Cal.App.1985); Arizmendi (Juarez) v. Systems Leasing Corp., 93 Cal.Rptr. 411, 416 (Cal.App.1971); see also Estate of Kuebler v. Superior Court, 146 Cal.Rptr. 481, 484 (Cal.App.1978). Here, Schee and SAD did not have actual notice of the existence of Perez until after Flora Bejarano's claim was settled and judgment was entered in her suit. By contrast, it can be inferred that Perez had notice of the pending case before the settlement became final. Perez was, and is, represented by the same attorney representing Bejarano and the other parties in the original action. A settlement was reached in the original case in July 1989. On August 29, 1989, Perez filed the complaint in this action, but the complaint was not served until after the court entered judgment dismissing Bejarano's suit with prejudice in light of the settlement. Under these circumstances, we cannot conclude that Schee and SAD implicitly waived the right to invoke the one action rule by dealing with Bejarano in her individual capacity. Perez could have intervened in the earlier suit, or, at the very least, could have given Schee and SAD notice of her claim before judgment became final.
 
 
 14
 Perez argues that to interpret the one action rule as barring her wrongful death claim would violate the equal protection clause of the Arizona Constitution by impermissibly interfering with her fundamental right to bring a wrongful death action under the Arizona Constitution. We are unpersuaded. Perez attempts to analogize to Anson v. American Motors Corp., 747 P.2d 581 (Ariz.App.1987). Here, unlike in Anson, any perceived burden on a wrongful death claimant actually arises out of the differences between a claimant in a wrongful death action and one in other types of personal injury suits. Perez has made no attempt to show that claimants in other types of tort suits are similarly situated.
 
 B
 
 15
 In contrast to the rule requiring all claimants to be joined in a single action against a single defendant, states that have considered the question have concluded that "there is ... no requirement that plaintiffs must join ... all potential defendants in one action." Helling v. Lew, 104 Cal.Rptr. 789, 792 (Cal.App.1972) (citing cases). The California Court of Appeal reasoned that
 
 
 16
 [the] object [of the wrongful death statute] was to protect a defendant from being vexed by several suits instituted by or in behalf of different equitable plaintiffs for the same injury, when all the parties could with perfect convenience be joined in one proceeding. It never contemplated depriving a plaintiff of the right to sue separately different joint tort-feasors....
 
 
 17
 Id. (quotation omitted). There is no reason to believe that the Arizona Supreme Court would follow a different analysis.
 
 
 18
 Here, Daniel was not a party to the original suit. Perez had separate causes of action against Schee and Daniel; the claim against Daniel was based on his independent negligence. Further, there is no concern here of overcompensating the injured parties for the wrongful death. The court in Helling emphasized that "there can be but one satisfaction, no matter how many judgments may be recovered." 104 Cal.Rptr. at 792. In the previous settlement, Bejarano's widow and children received $180,000. In this case, we conclude that the jury award of $280,000 in compensatory damages against Schee is not an exorbitant estimation of the injury Perez has suffered. See infra. If Perez alone has suffered $280,000 in losses, then logically the $180,000 settlement was not a complete satisfaction of both Mrs. Bejarano's and Perez's injuries. Thus, Perez's action against Daniel was not barred by the one action rule.
 
 C
 
 19
 Thus, the judgment against Schee and SAD must be vacated. We consider the other arguments raised by the appellants as they apply to Daniel only.
 
 III
 
 20
 Daniel argues that Mexican law, not Arizona law, should have been applied in determining damages.
 
 
 21
 Perez is a citizen of Sinaloa, Mexico. The law of Sinaloa is consistent with Mexican law generally, which severely limits damages in wrongful death actions. Mexican law does not allow recovery for pain and suffering or punitive damages; furthermore, allowable recovery for economic damages is limited. See Hurtado v. Superior Court of Sacramento County, 522 P.2d 666 (Cal.1974). In contrast, Arizona allows parents to recover the full range of tort damages for the wrongful death of their child, including compensatory damages for loss of the decedent's companionship, comfort, and guidance, Kemp v. Pinal County, 442 P.2d 864, 868 (Ariz.App.1968), and punitive damages. Boies v. Cole, 407 P.2d 917, 921 (Ariz.1965).
 
 
 22
 In a diversity case, we apply the conflict of law rules of the state in which the district court is located. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Arizona follows the "contacts" test set forth in the Restatement (Second) Conflict of Laws. Gordon v. Kramer, 604 P.2d 1153, 1154 (Ariz.App.1979).
 
 Section 175 of the Restatement provides:
 
 23
 In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in Sec. 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
 
 
 24
 (Emphasis added). Section 6(2) of the Restatement provides that the following factors are relevant in determining whether another state has a more significant relationship to the occurrence and the parties:
 
 
 25
 (a) The needs of the interstate and international systems,
 
 
 26
 (b) the relevant policies of the forum,
 
 
 27
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 
 
 28
 (d) the protection of justified expectations,
 
 
 29
 (e) the basic policies underlying the particular field of law,
 
 
 30
 (f) certainty, predictability and uniformity of result, and
 
 
 31
 (g) ease in the determination and application of the law to be applied.
 
 
 32
 In evaluating these factors, we must determine whether Arizona or Sinaloa has the greater interest in having its rule of damages applied.[1]
 
 
 33
 Here, it is clear that Arizona has the stronger interest in having its law applied. Subsections (b), (c), (e), and (g) of section 6(2) are determinative. Arizona tort law is designed in part to deter negligent conduct within its borders; thus, Arizona has a strong interest in the application of its laws allowing for full compensatory and punitive damages. Mexico's limitation of tort damages, in contrast, is designed to protect its residents "from excessive financial burdens or exaggerated claims." Hurtado, 522 P.2d at 670. "Since it is the plaintiffs and not the defendants who are the Mexican residents in this case, Mexico has no interest in applying its limitation of damages--Mexico has no defendant residents to protect and has no interest in denying full recovery to its residents injured by nonMexican defendants." Id. In addition, Arizona law is much easier for the district court in Arizona to ascertain and to apply than Sinaloan law. Not only would applying Mexican law involve language barriers, but a court would have to become familiar with a civil code system of law.
 
 
 34
 Daniel cites several cases holding that the law of the state in which the plaintiff resides should apply and argues that those cases mandate that Mexican law be applied here. In each case, however, the law of the place in which the injury occurred allowed for lesser recovery than the law of the state in which the plaintiff resided. The court in each case concluded that in those circumstances, the law of the domiciliary state should apply because that state has a strong interest in seeing that its citizens are fully compensated for injuries tortiously inflicted upon them. See Bryant v. Silverman, 703 P.2d 1190, 1194 (Ariz.1985) (Arizona law applied to Arizona resident's tort action arising out of an airplane crash in Colorado; Colorado law did not allow for the full range of tort damages); Baroldy v. Ortho Pharmaceuticals Corp., 760 P.2d 574, 578 (Ariz.App.1988) (Arizona law applied to Arizona resident's products liability action; state in which the injury occurred did not recognize the cause of action); Ambrose v. Illinois-California Express, Inc., 729 P.2d 331, 335 (Ariz.App.1986) (Michigan law applied to Michigan resident's claim; Arizona law did not recognize the cause of action). In contrast to the strong interest a state has in seeing that its residents are fully compensated, Mexico's policy of limiting damages "does not reflect a policy that widows and orphans should be denied full recovery." Hurtado, 522 P.2d at 670 (quoting Cavers, The Choice of Law Process 151 (1965)).
 
 
 35
 Daniel further argues that even if Arizona law applies in most cases in which Mexican citizens are injured by Americans in Arizona, this case is different because Bejarano had entered the country illegally. This argument is wholly without merit. The immigration status of the victim is irrelevant to the analysis. Arizona's tort system exists to compensate victims and to create incentives for citizens to act with the proper degree of care. Gordon, 604 P.2d at 1156. It does not exist to regulate immigration.
 
 
 36
 In short, we conclude that the district court properly chose to apply the law of Arizona instead of that of Sinaloa.
 
 IV
 
 37
 Daniel argues that the district court erred in refusing to grant his motion for remittitur on compensatory damages.
 
 
 38
 In Arizona, the law is well settled that the amount of an award for damages is a question peculiarly within the province of the jury and such award will not be disturbed on appeal except for the most cogent of reasons, i.e., the verdict is so exorbitant as to indicate passion, prejudice, mistake or a complete disregard of the evidence and instructions of the court.
 
 
 39
 Southern Pac. Transp. Co. v. Leuck, 535 P.2d 599, 609 (Ariz.1975) (citations and internal quotations omitted).
 
 
 40
 The size of the verdict here does not indicate that the jury was motivated by passion or prejudice, or disregarded the jury instructions. Perez presented expert testimony that it would cost $90,000 to purchase an annuity to replace, based on his past contributions, the income that her son would have provided her over her lifetime. Testimony was also presented that Bejarano performed a significant amount of work on Perez's farm each year, in addition to paying for food, electricity, and water. Finally, testimony was presented that Bejarano had always lived with Perez and would have continued to care for her throughout her life.
 
 
 41
 The district court instructed the jury that it was to consider several elements in determining compensatory damages:
 
 
 42
 A. The anguish, sorrow, stress, mental suffering, pain and shock Teresa Atienzo Perez has suffered and is reasonably expected to suffer in the future because of her son's death.
 
 
 43
 B. The loss of love, affection, companionship, care and comfort Mrs. Perez has suffered and is reasonably expected to suffer in the future because of her son's death.
 
 
 44
 C. The loss of income and services suffered by Mrs. Perez and loss of income and services reasonably expected to be suffered in the future because of her son's death.
 
 
 45
 Considering all of the components of the award, we cannot conclude that the award was exorbitant. We thus uphold the portion of the compensatory damage award attributable to Daniel's negligence.
 
 B
 
 46
 Daniel also challenges the award of punitive damages. He argues first that the standard for punitive damages was not met in this case; and second, that even if punitive damages were properly awarded, the amount awarded was excessive and a remittitur should have been granted.
 
 
 47
 * Under Arizona law, "to obtain punitive damages, plaintiff must prove that defendant's evil hand was guided by an evil mind." Rawlings v. Apodaca, 726 P.2d 565, 578 (Ariz.1986). The term "evil mind" has been defined broadly: a defendant acts with an evil mind when he or she "consciously pursue[s] a course of conduct knowing that it create[s] a substantial risk of significant harm to others." Id. Thus, punitive damages may be awarded when the jury finds that "the defendant was 'aware of and consciously disregard[ed] a substantial and unjustifiable risk that' significant harm would occur." Id. (quoting A.R.S. Sec. 13-105(5)(c), defining criminal recklessness).
 
 
 48
 Here, Daniel argues that a reasonable jury could not have found that he acted with an "evil mind." He does not argue that the jury instructions were incorrect; instead, he argues that the evidence does not support the jury's implicit finding. In reviewing such a claim, "we must view the evidence in the light most favorable to upholding the verdict." See Venerias v. Johnson, 622 P.2d 55, 58 (Ariz.App.1980).
 
 
 49
 Viewing the evidence in the light most favorable to Perez, a rational jury could have found that Daniel "consciously pursued a course of conduct knowing that it created a substantial risk of harm to others." Schee had already driven for more than the maximum allowable hours when he arrived in Atlanta. By law, he was not allowed to continue to drive until he had rested for at least eight hours. Daniel directed Schee to drive to Tucson with only short periods of rest, and directed Schee to falsify the log books by underreporting his hours. Evidence was presented indicating Daniel knew that the purpose of the service limits was to keep fatigued drivers off the road. Further, evidence was presented that Schee had told Daniel that he was worn out. A jury could conclude that Daniel knew Schee was overtired and legally not allowed to drive; that Daniel knew that Schee's driving while fatigued created a substantial risk of harm; and that when Daniel encouraged Schee to continue, Daniel acted in conscious disregard of that substantial risk.
 
 2
 
 50
 As with compensatory damages, "the amount of a punitive damage award is a matter of discretion with the trier of fact and will not be disturbed on appeal unless it is so unreasonable under the circumstances as to show influence of passion or prejudice." Puz v. McDonald, 680 P.2d 213, 215 (Ariz.App.1984). Daniel argues that the awards here were unreasonable because they were disproportionate to the wealth of the defendants.
 
 
 51
 Although under Arizona law a punitive damage award is not intended to devastate financially a defendant, no evidence was presented at trial about the financial status of Daniel. There simply is nothing in the record from which we could conclude that the award will financially devastate Daniel.
 
 
 52
 Daniel contends that it was up to Perez to present evidence of his financial status, and that she cannot collect punitive damages in the absence of such evidence. This contention is directly contradicted by Arizona case law. "[T]here is no requirement in Arizona that a plaintiff present evidence of the defendant's wealth to recover punitive damages." Rustin v. Cook, 694 P.2d 316, 321 (Ariz.App.1984). "In any event, a defendant may not complain of the absence of evidence of his wealth when he has made no effort to introduce such evidence." Nienstadt v. Wetzel, 651 P.2d 876, 885 (Ariz.App.1982).
 
 V
 
 53
 In sum, we conclude that Perez's action against Schee and SAD is barred by the one action rule, and we vacate the judgment against them. Perez's action against Daniel, in contrast, was not barred; we uphold the compensatory and punitive damage awards against him.
 
 
 54
 AFFIRMED in part and REVERSED in part; the parties are to bear their own costs.
 
 WALLACE, Chief Judge, dissenting:
 
 55
 I agree with the majority that Perez's claims against Schee and SAD, Inc. were barred by the "one action rule." I write separately because I conclude that Perez's claim against Daniel was similarly barred.
 
 
 56
 In Arizona, an action for wrongful death is statutory in origin. Maj. op. at 3. The Arizona courts have interpreted this statute to allow only one action for a wrongful death. "[T]here is manifestation, though only indirect, of a legislative intent that there by only one action for wrongful death brought as to anyone deceased." Reed v. Frey, 458 P.2d 386, 388 (Ariz.Ct.App.1969); see also Nunez v. Nunez, 545 P.2d 69, 73 (Ariz.Ct.App.1976). Because Arizona courts have interpreted the Arizona statute to allow only one action for a wrongful death, the majority's reliance upon Helling v. Lew, 104 Cal.Rptr. 789, 792 (Cal.App.1972), for contrary authority is inappropriate. I therefore respectfully dissent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Neither party has alleged that law or the state of Daniel's residence should be applied