818 P.2d 187

**STATE of Arizona, Appellee,**

v.

**Louise GALLAGHER, aka Louise Marks, Appellant.**

**No. 1 CA–CR 89–1173.**

Court of Appeals of Arizona, Division 1, Department B.

May 28, 1991.

Review Denied Oct. 22, 1991.

Grant Woods, The Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Crane McClennen, Asst. Atty. Gen., Phoenix, for appellee.

Kathleen Kelly, Phoenix, for appellant.

## OPINION

JACOBSON, Presiding Judge.

The primary issue presented by this appeal from a criminal conviction for unlawful killing of livestock is whether the estray laws of the state provide a complete defense.

Appellant Louise Gallagher (defendant) was convicted of one count of criminal damage, a class 6 felony, and one count of unlawful killing of livestock, a class 5 felony, arising out of the shooting and killing of "Rosie," a six year old palomino horse in foal, owned by defendant's neighbor.

The facts are taken in a light most favorable to sustaining the conviction. *See State v. Arredondo,* 155 Ariz. 314, 746 P.2d 484 (1987). A tenant of defendant testified that he informed defendant that several horses had gotten onto her property near a pig pen. The tenant testified that defendant "grabbed the gun and wanted to know if I wanted to go with her down to shoot a horse and I said no."

The tenant then climbed to the roof of his trailer and watched defendant drive to the area where the horses were located, get out of her car, and shoot a horse. At trial, the tenant was impeached by a prior inconsistent statement and by the fact that he had been accused of stealing some tools from defendant's ex-husband.

Defendant testified that, while armed with a rifle she carried for protection against coyotes and rattlesnakes, she had gone to feed the pigs when she came upon the three horses. She was startled as the horses ran toward her. As she backed up to avoid the onrushing animals, she tripped over a bush and the rifle accidentally discharged, killing "Rosie." However, an investigator with the livestock department testified that the path of the bullet was from the mare's neck on a downward path within the animal's body.

There is no dispute that the shooting occurred on defendant's property and that the horses were on that property without defendant's permission. The trial court found defendant guilty on both counts, and sentenced her to concurrent terms of six months probation, including thirty days in the county jail.

### *Sufficiency of the Evidence*

■ Defendant first contends that the state presented insufficient evidence to sustain the conviction. This contention is belied by simply referring to the tenant's testimony. Admittedly, the tenant was impeached, but the credibility of a witness is for the trier-of-fact, not an appellate court. *State v. Lambright,* 138 Ariz. 63, 673 P.2d 1 (1983), *cert. denied,* 469 U.S. 892, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984). Given the evidence before the trial court and our standard of appellate review, *see Arredondo, supra,* we find sufficient evidence to uphold the verdict.

### *"Taking Up" of Stray Animals*

■ Defendant's conviction for unlawful killing of livestock was based upon a violation of A.R.S. § 24–246(A), which provides:

A person who knowingly kills or sells livestock of another, the ownership of which is known or unknown, or who knowingly purchases livestock of another, the ownership of which is known or unknown, from a person not having the

lawful right to sell or dispose of such animals is guilty of a class 5 felony.

Defendant contends that because the trespassing mare was a stray animal, A.R.S. § 24–246(D) provides an absolute defense to prosecution both for criminal damage and for unlawful killing of livestock. That section provides:

> This section shall not apply to *taking up* animals under the estray laws.

A.R.S. § 24–246(D) (emphasis added). Stray animals are defined as "livestock, sheep or swine whose owner is unknown or cannot be located, or ... known but permits the animal to roam at large on the streets, alleys, roads, ranges, or premises of another without permission." A.R.S. § 24–311. "Livestock" includes horses. A.R.S. § 24–101(2).

There is no question that "Rosie" at the time of the shooting was a "stray animal" as defined by the estray laws. The question is whether that classification allows the killing of the animal with impunity based on a "taking up" defense under the estray laws. We believe not.

The estray laws provide a comprehensive scheme by which a *livestock inspector* or officer may take possession of a stray and, if the owner is unknown or cannot be located, sell the animal at public auction. A.R.S. § 24–312(A). The statute further provides for notice of the sale, the right of the owner to retake possession, and the right of the owner to redeem the animal from the purchaser at auction. A.R.S. § 24–312(B), (C), and (D). The estray statutes also provide for disposition of funds realized at the sale. A.R.S. §§ 24–313, –314.

The current statutory scheme, as compared to the prior law, creates no rights in private individuals with regard to strays. *Compare* Ariz.Code (1939) § 50–502 (providing a procedure for persons other than livestock inspectors to take possession and sell strays) *with* 1952 Ariz.Sess.Laws ch. 124, § 1 (currently incorporated into A.R.S. §§ 24–311 to –314).

Moreover, even under the prior law, as in the current law, the authorization is for "taking up" stray animals, not destroying them. Although "taking up" is not defined by statute or Arizona case law, authority exists that the term means to take possession of an animal running loose on the range. *See, e.g., Cochran v. State,* 36 Tex.Crim. 115, 35 S.W. 968 (App.1896). We agree with this definition. In our opinion, the authorization to "take up" a stray animal cannot be equated with authorization for its destruction. This conclusion is also supported by reference to the statutory predecessors of the current estray laws. *See* Ariz.Civ.Code (1901) § 2491 ("Any one who shall take up an animal shall, during the time it is in his possession as an estray, properly feed and care for the same, but shall not use the same"); Ariz. Civ.Code (1913) § 3811 (same); Ariz.Rev. Code (1928) § 2136 ("shall, during the time it is in his possession as an estray, feed and care for but not use the same").

We are also supported in this interpretation by A.R.S. § 24–504, which provides that if livestock enters onto lands that are enclosed by a lawful fence, the landowner is entitled to bring a suit for damages and impress a lien on the livestock for the amount of the judgment. This statutory scheme does not support a remedy of self-help by killing stray livestock. In summary, we hold that the estray laws do not provide a statutory right for private landowners to employ self-help by killing trespassing livestock.

The judgment and sentence of the court are affirmed.

EHRLICH and EUBANK, JJ., concur.