NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MARSHON GARTH, *Appellant*.

No. 1 CA-CR 14-0825
FILED 9-24-2015

Appeal from the Superior Court in Maricopa County
No.  CR2013-421264-001
The Honorable Sam J. Myers, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Janelle A. Mc Eachern Attorney at Law, Chandler
By Janelle A. Mc Eachern
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Jon W. Thompson joined.

D O W N I E, Judge:

¶1        Marshon Garth appeals his convictions for first degree murder, aggravated assault, and kidnapping.  Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), defense counsel has searched the record, found no arguable question of law, and asked us to review the record for reversible error.  *See State v. Richardson*, 175 Ariz. 336, 339 (App. 1993).  Garth was given the opportunity to file a supplemental brief *in propria persona*, but he has not done so.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

¶2        J.G. and her boyfriend, M.G., needed money, so J.G. posted an online escort ad.  Garth responded to the ad.  J.G. agreed to perform oral sex in exchange for money, and M.G. drove J.G. to the home of S.B. — Garth's girlfriend.  When they arrived, an orange and black Yukon was parked in front of the home.  M.G. stayed nearby in his car while J.G. went inside.

¶3        Garth told J.G. that a friend was bringing him the money they had agreed on.  Garth then looked out the window, saw M.G., and asked J.G. if she knew him.  J.G. responded that she did not because Garth "seemed mad that somebody was outside of his house" and was "talking loud and screaming."  Garth went upstairs and returned with a gun, which he placed in his waistband. J.G. again asked about payment, and Garth said he had "two earrings that were worth $5,000 each and he would let [J.G.] hold one."  J.G. responded, "If you don't pay me, I'm leaving with your earring."  Garth replied, "That's fine."

---

[1]        "We view the evidence in the light most favorable to sustaining the verdicts and resolve all inferences against appellant."  *State v. Nihiser*, 191 Ariz. 199, 201 (App. 1997).

¶4  After J.G. performed oral sex, she requested payment. Garth stated his friend had been robbed, he would have to go meet him, and J.G. could "follow me to the money." J.G. agreed, but said, "I'm keeping the earring until I get my cash." Garth objected, and when J.G. tried to leave through the front door, Garth put his hand on the door to block her exit. J.G. then texted M.G., stating, "[Garth]'s not letting me go. He won't pay me."

¶5  M.G. pulled his car in front of the home and began "honking and waving," trying to "cause a scene." J.G. dialed 911 and told Garth she would notify the police if he did not let her go. M.G. then began banging on the front door. Garth opened the door, and M.G. told J.G. to leave, but Garth stated, "She can't leave." M.G. and Garth both grabbed J.G. and began pulling her in different directions. Garth eventually let go, and J.G. and M.G. ran to their vehicle. The two men were still arguing, and Garth "lifted up his shirt and showed [M.G.] that he had a gun." As M.G. was getting into the vehicle, Garth pulled the gun out, pointed it at them, and J.G. heard gunshots. J.G. was shot three times. M.G. was also shot. M.G. drove around the corner before losing control of the vehicle and hitting a tree. M.G. died at the scene. Garth drove away in the Yukon before paramedics or police arrived.

¶6  In the next few days, Garth and S.B. rented a car and took the Yukon to V.L.'s home. V.L. agreed to sell the vehicle, but V.L. and Garth later took it to a sales lot. Police officers subsequently confiscated the Yukon.

¶7  Garth was charged with first degree murder, a class one dangerous felony, in violation of Arizona Revised Statutes ("A.R.S.") § 13-1105(A)(2); aggravated assault, a class three dangerous felony, in violation of A.R.S. §§ 13-1203(A)(1), -1204(A)(2); and kidnapping, a class two felony, in violation of A.R.S. § 13-1304(A)(4). At trial, J.G. and V.L. testified to the above-stated facts. The jury also heard testimony from law enforcement officers, crime scene specialists, and a medical examiner and received exhibits corroborating J.G.'s testimony.

¶8  Garth moved for a judgment of acquittal on the kidnapping and felony murder charges pursuant to Arizona Rule of Criminal Procedure 20, which the court denied. The jury found Garth guilty on all counts. The jury also determined counts one and two were dangerous offenses. The court sentenced Garth to life imprisonment for count one, 15 years' imprisonment for count two, and 10 years' imprisonment for count three, with 574 days of presentence incarceration credit. The court ordered

the sentences for counts one and three to run concurrently, with the sentence for count two to run consecutively. Garth timely appealed.

**DISCUSSION**

**¶9** We have read and considered the brief submitted by Garth's counsel and have reviewed the entire record. *See Leon,* 104 Ariz. at 300. We find no reversible error. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure, and the sentences imposed were within the statutory range. Garth was present at all critical phases of the proceedings and was represented by counsel. The jury was properly impaneled and instructed. The jury instructions were consistent with the offenses charged. The record reflects no irregularity in the deliberation process.

**¶10** The record includes substantial evidence to support the jury's verdict. *See State v. Tison*, 129 Ariz. 546, 552 (1981) (In reviewing for sufficiency of evidence, "[t]he test to be applied is whether there is substantial evidence to support a guilty verdict."). "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290 (1996). Substantial evidence "may be either circumstantial or direct." *State v. Henry*, 205 Ariz. 229, 232, ¶ 11 (App. 2003).

**¶11** For count three, the State was required to prove that Garth knowingly restrained J.G. with the intent to place her in reasonable apprehension of imminent physical injury. *See* A.R.S. § 13-1304(A)(4). J.G. testified that while he was in possession of a gun, Garth told her she could not leave the house and blocked her exit. Even after M.G. arrived, Garth would not let J.G. go; he physically held onto her while the two men fought over her. J.G. testified she knew Garth had a gun, which caused her fear.

**¶12** For count two, the State was required to prove Garth intentionally, knowingly, or recklessly caused physical injury to J.G. using a deadly weapon or dangerous instrument. *See* A.R.S. § 13-1203(A)(1), -1204(A)(2). J.G. testified that as she and M.G. tried to drive away, Garth pointed the gun at them and pulled the trigger several times. J.G. suffered multiple gunshot wounds. In addition to these facts, from which jurors could infer Garth's intent to harm J.G., the jury was instructed on the doctrine of transferred intent. *See State v. Cantua-Ramirez*, 149 Ariz. 377, 379 (App. 1986) ("defendant's felonious intent toward the intended victim is transferred to the unintended victim who is actually injured"). Thus, the

jury also could have found that Garth intended to harm M.G. but injured J.G.

¶13 For count one, the State was required to prove Garth (1) committed or attempted to commit kidnapping, and (2) caused M.G.'s death in the course of and in furtherance of or immediate flight from the offense of kidnapping. *See* A.R.S. § 13-1105(A)(2). As discussed *supra*, the evidence supports a finding that Garth committed or attempted to commit kidnapping. And the evidence supports a finding that he caused M.G.'s death in the course and furtherance of, or immediate flight from, J.G.'s kidnapping. *See State v. Lacy*, 187 Ariz. 340, 350 (1996) ("A death is 'in furtherance' when it results from any action taken to facilitate the accomplishment of the predicate felony."); *State v. Lucero*, 204 Ariz. 363, 367, ¶¶ 21–23 (App. 2003) ("immediate flight" lasted several minutes after robbery while defendant ran into nearby apartment complex). J.G. testified she was unable to leave until M.G. got involved, and even then, Garth continued to physically restrain her.

¶14 Although J.G.'s testimony provided ample support for the guilty verdicts, the State offered additional corroborating evidence. For example, the earring J.G. had at the hospital contained Garth's DNA, Garth's fingerprint was found on the Yukon, Garth was wearing a "flat silver-colored earring with clear stone studs" when arrested, and the single earrings recovered from J.G. and Garth were a matching set. The jury also received copies of phone records, showing that J.G. had texted M.G. to warn him about Garth's gun. Finally, at trial, Garth admitted shooting M.G., though he claimed it was in self-defense. The jury was instructed on self-defense but obviously disbelieved Garth's claim. The jury also heard testimony from a detective that Garth had initially denied being at S.B.'s house or being present at the time of the shootings, claiming he was out of state at the time. Weight and credibility determinations are the province of the trier of fact, *State v. Gallagher,* 169 Ariz. 202, 203 (App. 1991), and we do not reweigh conflicting evidence on appeal, *State v. Guerra,* 161 Ariz. 289, 293 (1989).

## CONCLUSION

¶15 We affirm Garth's convictions and sentences. Counsel's obligations pertaining to Garth's representation in this appeal have ended. Counsel need do nothing more than inform Garth of the status of the appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). On the court's own motion,

Garth shall have thirty days from the date of this decision to proceed, if he desires, with an *in propria persona* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
FILED: ama