NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JEFFREY and MARGARET MILLER, husband and wife,
*Plaintiffs/Appellants*,

*v.*

FEDERAL NATIONAL MORTGAGE ASSOCIATION aka FANNIE MAE,
a corporation organized under the laws of the United States; SETERUS,
INC aka LENDER BUSINESS PROCESS SERVICES (LBPS), a foreign
corporation, *Defendants/Appellees*.

No. 1 CA-CV 14-0602
FILED 12-10-2015

Appeal from the Superior Court in Mohave County
No. B8015CV201104116
The Honorable Charles W. Gurtler, Jr., Judge

**AFFIRMED**

COUNSEL

William A. Miller, P.L.L.C, Scottsdale
By William A. Miller
*Counsel for Plaintiffs/Appellants*

Wright Finlay & Zak, L.L.P., Scottsdale
By Kim R. Lepore, Jamin S. Neil
*Counsel for Defendants/Appellees*

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Maurice Portley joined.

D O W N I E, Judge:

¶1        Jeffrey and Margaret Miller appeal from an adverse grant of summary judgment and from the denial of their motion for new trial.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        The Millers defaulted on their mortgage loan obligations in November 2009.  At the time, Federal National Mortgage Associates ("Fannie Mae") held the promissory note and deed of trust for the Millers' property, and Chase Bank serviced the loan.  The Millers entered into a forbearance agreement with Chase in January 2010 that required them to make three reduced payments of $1945, followed by a June payment of more than $11,700 to bring the account current.  The Millers did not make the June payment but continued paying the reduced amount through July because they claimed Chase agreed to treat those payments as a trial period for a permanent loan modification.

¶3        Seterus, Inc. took over the Millers' loan servicing in August 2010.[1]  In September, Seterus sent the Millers a letter that stated:

> Our records indicate that you successfully completed the terms of your signed Forbearance Agreement established through your prior loan servicer. . . . Please be advised, the terms of your signed Forbearance Agreement do not contain a guarantee of immediate Modification of the terms of your signed Note and Deed of Trust.  Rather, . . . "After the final payment of the Forbearance Plan, regular payments will become due in addition to any delinquent payments, fees, and/or charges.  If your account is not current once the

---

[1]        At the time, Seterus was known as Lender Business Process Services.

Forbearance period has ended, *collection and/or foreclosure activity will resume*."

¶4         The Millers communicated with Fannie Mae and Seterus (collectively, "Lenders") but did not work out a payment plan.  They made no mortgage payments after September 2010, and a trustee's sale was set for February 2011. Seterus postponed the sale with the understanding the Millers would wire a payment of $2000, but the Millers instead filed for bankruptcy.  Lenders did not contact the Millers until after their bankruptcy discharge in May 2011.

¶5         The trustee's sale was re-set for July 5, 2011.  Mrs. Miller attended a debt counseling event on June 2, 2011 and discussed loan workout options with Lenders' representatives, but the trustee's sale went forward as scheduled, and Fannie Mae took possession of the property.

¶6         The Millers sued Lenders for breach of contract, negligent/intentional misrepresentation, declaratory judgment, quiet title (as to Fannie Mae only), and injunctive relief (as to Fannie Mae only).  The Millers attached two letters to their complaint (collectively, "the Letters"), which on their face appeared to be authored by Lenders.  One was purportedly signed by Jason Smith on behalf of Seterus and included terms of a "new note," with payments to begin August 1, 2011.  The other letter was supposedly signed by Carolyn Patton on behalf of Fannie Mae and included similar information but discussed a "permanent modification after you pay your first three payments."

¶7         After a lengthy and contentious discovery period, the trial court dismissed the Millers' breach of contract, quiet title, and declaratory judgment claims as barred by Arizona Revised Statutes ("A.R.S.") section 33-811(C).  The court gave the Millers leave to amend to allege wrongful foreclosure.

¶8         The court conducted a bench trial and ruled in favor of Lenders on the remaining claims for negligent/intentional misrepresentation and wrongful foreclosure.  Among other things, the court found the record "replete with instances of MARGARET MILLER'S testimony not being credible" and ruled the Letters were obvious forgeries.

¶9         The Millers filed a motion for new trial under Arizona Rule of Civil Procedure ("Rule") 59(a)(2), arguing Lenders committed "discovery abuse" by not disclosing recorded phone calls and complete electronic loan files — the existence of which the Millers learned of during

depositions conducted roughly two months before trial. The trial court denied the request to "relook at a discovery issue," stating, "nowhere in the 8 subsections of Rule 59(a), A.R.C.P. is this an enumerated basis or cause by which a Judgment can be vacated and a new trial granted." The court instead analyzed the Millers' motion under Rule 59(a)(4), dealing with newly discovered evidence, and ruled the evidence at issue could have been discovered through reasonable diligence.

¶10         The Millers timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1), (B).

## DISCUSSION

### I.     Waiver under A.R.S. § 33-811(C)

¶11         The Millers challenge the entry of summary judgment on their breach of contract, quiet title, and declaratory judgment claims. They frame the relevant inquiry as "whether the party claiming the protection of A.R.S. § 33-811(C) waiver of defenses can affirmatively mislead the borrower into believing that no foreclosure sale will occur."

¶12         We review a grant of summary judgment *de novo*, viewing the evidence and reasonable inferences therefrom in the light most favorable to the non-moving party. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). We review questions of law and statutory interpretation *de novo* as well. *E. Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n*, 206 Ariz. 399, 406, ¶ 19 (App. 2003). We also determine *de novo* the availability of equitable relief. *See Andrews*, 205 Ariz. at 240, ¶ 12.

¶13         A.R.S. § 33-811(C) provides:

> The trustor, its successors or assigns, and all persons to whom the trustee mails a notice of a sale under a trust deed pursuant to § 33-809 shall waive all defenses and objections to the sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p.m. Mountain standard time on the last business day before the scheduled date of the sale.

A trustor who fails to enjoin a trustee's sale before its completion waives any claim of title to the property, as well as any claims dependent on the sale. *Morgan AZ Fin., L.L.C. v. Gotses*, 235 Ariz. 21, 23–24, ¶ 7 (App. 2014). "[O]nce a non-judicial foreclosure sale has taken place, the only defense

that may be raised is lack of notice of the sale." *Steinberger v. McVey ex rel. Cty. of Maricopa*, 234 Ariz. 125, 136, ¶ 42 (App. 2014).

**¶14**       The Millers do not dispute that they received notice of the July 5, 2011 trustee's sale, arguing instead that Lenders' "misrepresentations and omissions were the only reason why [they] failed to take any action to prevent the trustee's sale by filing suit or seeking an injunction." However, the record before the trial court at the time of its summary judgment ruling included no representations by Lenders regarding the trustee's sale.[2]  And Seterus had previously advised the Millers that:  "If we already have started a foreclosure proceeding, it will not be postponed unless we advise you in writing of such postponement." Even if the Letters could be viewed as legitimate at the summary judgment stage, they do not address the trustee's sale, let alone cancel or postpone it.[3]

**¶15**       Based on the record before it, the trial court properly relied on A.R.S. § 33-811(C) in dismissing the claims for breach of contract, quiet title, and declaratory judgment.

## II.    Motion for New Trial

**¶16**       The Millers also contend the court should have granted their motion for new trial because Lenders failed to disclose documents and recordings critical to their claims. Specifically, they contend "[t]he complete Pulse system records, the Impact system records, the recorded telephone conversations, and the internal email communications are all subject to Rule 26.1's mandatory automatic disclosure obligation."[4] According to the Millers, failure to disclose such evidence entitles them to a new trial under Rule 59(a)(2) for misconduct by the prevailing party,

---

[2]      The Millers concede in their opening brief that Lenders said nothing about the trustee's sale and that they simply assumed the sale would not go forward.

[3]      Although Lenders alleged from the outset that the Letters were forgeries, most of the evidence regarding that issue was presented at trial. For purposes of our summary judgment analysis, we assume the legitimacy of the Letters.

[4]      "Pulse" is a computer program that includes "[p]retty much everything to do with the maintenance of the loan."  "Impact" is a computer decision-making tool used "for forbearance plans, repayment plans, [and] potential loan mods."

and they assert that the trial court erroneously analyzed the issue under Rule 59(a)(4) (newly discovered evidence).

¶17        For the sake of argument, we assume without deciding that: (1) Lenders were obligated to disclose and/or produce the evidence in question; and (2) failure to disclose the information was misconduct under Rule 59(a). We nonetheless find no reversible error.

¶18        We will uphold the denial of a motion for new trial unless it "reflects a manifest abuse of discretion given the record and circumstances of the case." *Styles v. Ceranski*, 185 Ariz. 448, 450 (App. 1996). The burden of demonstrating that the trial court abused its discretion lies with the party seeking to overturn the ruling. *In re Estate of Long*, 229 Ariz. 458, 464, ¶ 22 (App. 2012). A court abuses its discretion if there is "no evidence to support its conclusion or the reasons given by the court are clearly untenable, legally incorrect, or amount to a denial of justice." *Searchtoppers.com, L.L.C. v. TrustCash LLC*, 231 Ariz. 236, 241, ¶ 20 (App. 2012). We will affirm the trial court's decision if it is correct for any reason. *Reyes v. Frank's Serv. & Trucking, LLC*, 235 Ariz. 605, 610, ¶ 16 (App. 2014).

¶19        Contrary to the Millers' suggestion, "a new trial on grounds of misconduct is never granted as a disciplinary measure." *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 451 (1982). The trial court was well aware of the parties' ongoing discovery disputes, stating at one point: "[T]he Court appreciates and understands that you folks have not conducted yourselves tremendously professional in the Court's estimation with respect to cooperation amongst each other. So that, as far as the Court is concerned, is a given." In denying the motion for new trial, the court noted that the Millers could have filed "another Motion to Compel and/or request sanctions. The failure to take appropriate action is deemed a waiver." We agree. Sanctions for discovery violations are within the trial court's "broad discretion." *Rustin v. Cook*, 143 Ariz. 486, 490 (App. 1984). The court may properly consider "the fact that no timely objection was made and it was not until after the unfavorable verdicts that the trial court was asked to act." *Id.* By their own admission, the Millers learned of the purportedly missing documents during pretrial depositions, yet filed no additional discovery motions.

¶20        We also reject the Millers' contention that whether to grant a new trial "is not contingent on any determination that the undisclosed documents would have had an effect on the outcome." According to the Millers, "[t]he analysis under Rule 60(c)(3) (and therefore Rule 59(a)(2))

focuses on the unfairness of a party's misconduct, not the reliability of the resulting outcome," and they rely on cases arising under Rule 60(c), arguing there is "no difference between the analysis under Rule 60(c) which applies once the judgment has been entered and Rule 59(a) which applies immediately before judgment is entered." We disagree.

¶21        Rule 59(a) and Rule 60(c) differ in more than just timing.  A motion for new trial based on misconduct under Rule 59(a) hinges on whether the alleged misconduct materially affected the aggrieved party's rights. *See Leavy v. Parsell*, 188 Ariz. 69, 72 (1997).  Thus, a new trial is warranted "only when it appears probable that the misconduct actually influenced the verdict." *Id.*  Relief based on misconduct under Rule 60(c), on the other hand, "does not require a showing that the outcome of the case would have been different but for the nondisclosure." *Norwest Bank (Minn.), N.A. v. Symington*, 197 Ariz. 181, 187, ¶ 26 n.1 (App. 2000*); see also Estate of Page v. Litzenburg*, 177 Ariz. 84, 94 (App. 1993) (a sufficient basis for denying a new trial motion may be an insufficient basis for denying rule 60(c) relief).

¶22        The Millers have not established how any undisclosed information would have affected the outcome.  It was undisputed that Lenders discussed the possibility of a loan modification with the Millers in the month preceding the trustee's sale.  But the Letters and Mrs. Miller's testimony were the *only* evidence suggesting Lenders gave any assurance a modification was in place.  And the trial court determined the letters were forgeries and Mrs. Miller's testimony was incredible.  Among other things, the court noted that Mrs. Miller lied about being hospitalized as a result of the foreclosure, knowing the president of Fannie Mae, and having terminal cancer. The court also concluded the Millers' handwriting expert was not credible, whereas the Lenders' expert offered credible testimony and provided "example after example of MARGARET MILLER's handwriting as compared to the 'signed' names on the [Letters]."  Later, in awarding attorneys' fees to Lenders, the court ruled that the Millers prosecuted their claims "without substantial justification" and stated that the entirety of their case "was built on a falsehood.  That falsehood was formulated by one person, that being MARGARET MILLER."  We do not reweigh the evidence on appeal, and the credibility of witnesses is for the trier of fact to determine, not the appellate court. *See State v. Gallagher*, 169 Ariz. 202, 203 (App. 1991).  Moreover, the Millers' suggestion that any undisclosed information would have supported their position at trial is wholly speculative.

7

**¶23**       Even if the trial court should have analyzed the motion for new trial under Rule 59(a)(2), the Millers have failed to establish that they were entitled to relief.

## CONCLUSION

**¶24**       We affirm the judgment of the superior court.  We deny the Millers' request for attorneys' fees because they have not prevailed.  *See* A.R.S. § 12–341.01.  In the exercise of our discretion, we deny Lenders' fee request.  However, Lenders are entitled to recover their taxable costs on appeal upon compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama