NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

STEWART EDWARD YOUNAN, *Appellant*.

No. 1 CA-CR 14-0042
FILED 2-25-2016

Appeal from the Superior Court in Maricopa County
No.  CR2009-006960-003
The Honorable Sherry K. Stephens, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By David A. Simpson
*Counsel for Appellee*

Janelle A. McEachern Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Andrew W. Gould, Judge John C. Gemmill, and Judge Margaret H. Downie delivered the decision of the Court.

---

**PER CURIAM**:

¶1        Stewart Edward Younan appeals his convictions for two counts of conspiracy to commit first degree murder and two counts of participation in a criminal syndicate.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

¶2        Younan befriended Blaine McNeese, who at the time was a Department of Public Safety officer.  Younan introduced himself as "Rosko Castellano," explained that he owned several businesses, and gave McNeese a one-hundred dollar bill on which he had written his telephone number.  Younan later asked McNeese to find the address of R.A., whom he identified as an ex-girlfriend.[2]  Although it was unlawful to do so, McNeese used law enforcement resources to obtain the woman's address, which he gave to Younan.  McNeese also generated two false police reports at Younan's request.  Additionally, McNeese provided Younan with information about an individual Younan wanted to "strong arm" or kidnap for ransom and gave Younan zip ties and handcuffs to use in the kidnapping.[3]  In 2001, Younan was arrested for a probation violation, and McNeese helped get him released from jail by contacting his probation officer.  Younan gave McNeese $4,000 for his efforts.

¶3        In January 2005, Detective A. joined an investigation into McNeese's criminal activities, which triggered an investigation into Younan's criminal syndicate.  Investigators discovered that Younan had

---

[1]        "We view the evidence in the light most favorable to sustaining the verdicts and resolve all inferences against appellant."  *State v. Nihiser*, 191 Ariz. 199, 201 (App. 1997).

[2]        In fact, R.A. was a prosecutor assigned to several of Younan's criminal cases.

[3]        McNeese was convicted of several crimes stemming from his association with Younan.  *See State v. McNeese*, 1 CA-CR 10-0122, 2011 WL 2462937 (Ariz. App. June 21, 2011) (mem. decision).

directed his subordinates to commit numerous felonies, including burglary, armed robbery, kidnapping, transportation of marijuana for sale, and drug "rips." After learning that one of Younan's "bodyguards" — K.H. — was in custody, Detective A. interviewed K.H. Detective A. later testified:

> [A]bout halfway through the interview, [K.H.] began describing a group of guys that he was with, [Younan] being one of them, plotting to take out or to kill a detective. He continued to tell me in more detail and describe the residence and the vehicles and the goings on at that particular residence, and at that point I realized that he was talking about me.

¶4        Investigators learned that, at Younan's behest, subordinates had procured a car and a gun, driven past Detective A.'s home numerous times, and dug a grave in the desert to bury his body, as well as the body of J.K. — whom Younan believed had "snitch[ed]" on him. Detective A. ceased involvement in the Younan-related investigations and moved with his family to a new residence. In the meantime, Younan was arrested for a separate offense, and, while incarcerated, hired a private investigator to obtain personal information about Detective A. and his wife, including their new address.

¶5        In June 2009, Younan was charged with two counts of conspiracy to commit first degree murder — class 1 felonies — and two counts of participation in a criminal syndicate — class 2 felonies. Younan moved to dismiss the indictment, asserting violations of his Sixth Amendment right to counsel. The court commenced an evidentiary hearing at which Younan testified. The court ordered Younan to undergo a competency evaluation pursuant to Arizona Rule of Criminal Procedure 11. After Younan was evaluated and deemed competent, the court completed the evidentiary hearing and denied the motion to dismiss.

¶6        In the meantime, Younan filed a motion to change counsel, or, alternatively, to proceed *in propria persona*. Younan requested counsel from "out of state so there's no conflict." The court declined to appoint substitute counsel but permitted Younan to represent himself with the assistance of advisory counsel.

¶7        A jury trial ensued. During voir dire, the court granted Younan's request to reinstate his advisory counsel as his trial counsel. After the State began presenting its case, the defense orally moved to sever the count alleging participation in a criminal syndicate through use of a public

servant. The court denied the motion as untimely. The court further found that joinder was proper under Arizona Rule of Criminal Procedure 13.3(a).

¶8 The jury found Younan guilty as charged. The court sentenced him to concurrent life terms for the conspiracy convictions, with a possibility of parole after 25 years, and imposed a 20-year concurrent term for one of the participation in a criminal syndicate counts; and for the other such charge, the court imposed a consecutive 20-year sentence. Younan timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

**DISCUSSION**

**I.      Motion to Dismiss**

¶9 Younan asserts in cursory fashion that the superior court erred by denying his motion to dismiss based on asserted violations of his Sixth Amendment right to counsel. He does not identify any portion of the record that supports this claim. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi) (Appellant's brief shall include "[a]n argument which shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on."). He merely refers to "complain[ts]" and "assert[ions]" raised in his motion to dismiss and points generally to the "facts referenced" in his 60-page "Statement of Case and Facts" section of the opening brief. Merely mentioning an argument in an appellate brief is insufficient. Opening briefs must present significant arguments, supported by authority. The failure to so argue a claim usually constitutes abandonment and a waiver of that claim. *State v. Moody*, 208 Ariz. 424, 452 n.9, ¶ 101 (2004).

¶10 Moreover, during a court hearing on November 4, 2011, defense counsel withdrew the argument that the charges should be dismissed based on problems Younan experienced contacting counsel.[4]

---

[4] Furthermore, the sheriff explained how jail personnel became aware of certain calls. It was not by listening to them, but occurred when calls were dropped because Younan and his lawyer attempted to bypass the jail's prohibition against three-way calls. According to the sheriff, the jail's phone system detects such attempts and terminates the calls. The sheriff further explained that because defense counsel's telephone number was registered in a database of "legal numbers," the jail's phone system

And Younan cites nothing in the record that supports his assertion that law enforcement "eavesdropped" on conversations with his counsel and investigator. To the extent he offered such testimony at the evidentiary hearing, it is apparent that the superior court did not find it credible. *See State v. Gallagher,* 169 Ariz. 202, 203 (App. 1991) (the credibility of a witness is for the trier of fact and not the appellate court).

¶11　　For these reasons, we reject Younan's contention that the superior court erred by denying his motion to dismiss.

## II.　Appointed Counsel

¶12　　Younan was represented by at least six attorneys. Two of his lawyers withdrew due to irreconcilable conflicts with Younan. Younan nevertheless contends the trial court erred by denying his request to once again substitute counsel in July 2012.

¶13　　A trial court's ruling on a request for substitute counsel "will not be disturbed absent an abuse of discretion." *State v. Cromwell*, 211 Ariz. 181, 186, ¶ 27 (2005). The Sixth Amendment right to counsel does not guarantee a defendant a "meaningful relationship" with his attorney, but rather demands that a defendant's rights be balanced "against the public interest in judicial economy, efficiency and fairness." *Id.* at 186–87, ¶¶ 28, 31. In ruling on a request for substitute counsel, a trial court considers factors such as "whether an irreconcilable conflict exists . . . whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed between the alleged offense and trial; the proclivity of the defendant to change counsel; and quality of counsel." *Id.* at 187, ¶ 31. To establish an irreconcilable conflict, "the defendant must present evidence of a severe

---

recognized the number and did not record calls to that number. Younan presented no controverting evidence. Regarding calls to the investigator, the record reflects that for a period of time, they were not considered legal calls because the investigator had not registered her phone number with the jail to be included in the database of legal numbers, and when Younan called her, he received an automated message advising that, if he was attempting to make a legal call, to hang up and dial another number. Younan did not do so, but instead chose to speak with the investigator. At some point before the hearing on the motion to dismiss, the investigator apparently registered her number as a protected legal call.

and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." *State v. Hernandez*, 232 Ariz. 313, 318, ¶ 15 (2013). "A colorable claim must go beyond personality conflicts or disagreements with counsel over trial strategy." *Id.*

**¶14** Younan did not establish the requisite irreconcilable conflict. The record reflects — and Younan admits — that he "refused to speak with his attorney at one point" because he was more concerned about his conditions of confinement than the impending trial. *See Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985) ("A defendant, by unreasonable silence or intentional lack of cooperation, cannot thwart the law as to appointment of counsel."). During the time trial counsel served as advisory counsel, the court observed:

> Your advisory counsel is going above and beyond in terms of meeting with you and going over the evidence hours and hours on end.
>
> In my years of practicing law, I have never seen an attorney spend so much time with a defendant working on a case. Ever. So I think you're very fortunate. I know you feel like your rights are being trampled, but truthfully, I think you're getting a lot of accommodations that other defendants don't receive.

**¶15** Although Younan and his counsel disagreed about trial strategy and whether to file certain motions, counsel spent days with Younan reviewing the State's evidence before trial — maintaining far more than minimal contact. Additionally, given Younan's proclivity to change counsel, nothing in the record suggests he would not assert the same disagreements with yet another attorney. Finally, Younan's trial counsel actively participated in voir dire, made numerous objections to the State's evidence, thoroughly cross-examined the State's most significant witnesses (sometimes for days), and made lengthy closing arguments to the jury.

**¶16** The trial court acted within its considerable discretion in denying Younan's request to substitute counsel. *See, e.g., State v. Henry*, 189 Ariz. 542, 547 (1997) ("When a defendant has repeatedly claimed 'irreconcilable conflict' with a series of attorneys, the court may deny a motion for yet another lawyer where the orderly administration of justice so requires."); *State v. LaGrand*, 152 Ariz. 483, 487 (1987) (no abuse of discretion in denying motion to remove counsel in light of lengthy pretrial

delay and the fact that "counsel had already been changed once"); *Daniels v. Woodford*, 428 F.3d 1181, 1198 (9th Cir. 2005) (a defendant is entitled to new counsel only if communication broke down "with legitimate reason" and not from "unreasonable contumacy").

### III.    Motion to Sever

**¶17**        Younan argues the court erred in denying his motion to sever the count alleging participation in a criminal syndicate "by an act or omission by Blaine McNeese, a public servant, in violation of his official duty." We conclude otherwise.

**¶18**        Arizona Rule of Criminal Procedure 13.4(c) provides, in relevant part: "*A defendant's motion to sever offenses . . . must be made at least 20 days prior to trial . . .* and, if denied, renewed during trial at or before the close of the evidence. . . . Severance is waived if a proper motion is not timely made and renewed." (Emphasis added.) Younan did not move to sever until after the State began presenting its case-in-chief at trial. As such, his motion was untimely and was properly denied on that basis alone.[5]

---

[5]        The court also properly denied the severance request on substantive grounds. As charged, "A person commits participating in a criminal syndicate by . . . [i]ntentionally promoting or furthering the criminal objectives of a criminal syndicate by inducing or committing any act or omission by a public servant in violation of his official duty." A.R.S. § 13-2308(A)(4). Trial evidence established that Younan directed a criminal syndicate to commit felonies for financial gain. To prevent investigations and prosecutions, Younan instructed his syndicate associates to murder certain individuals. By causing McNeese to search for and provide personal information regarding a deputy county attorney who had prosecuted him, and by inducing McNeese to obtain Younan's early release from jail and provide zip ties and handcuffs to effectuate a kidnapping, the offense at issue is "based on the same conduct or [is] otherwise connected together in [its] commission" to the other charged offenses. *See* Ariz. R. Crim. P. 13.3(a). Further, the court instructed the jury to consider each offense separately and advised that the State must prove the offenses beyond a reasonable doubt. The record thus suggests no prejudice arising from denial of the severance request. *See State v. Martinez-Villareal*, 145 Ariz. 441, 446 (1985); *see also State v. Via*, 146 Ariz. 108, 115 (1985) (instruction that jury should consider evidence of each count separately supports finding defendant received fair determination of guilt).

## IV.    Mistrial Requests

¶19        Finally, Younan contends the trial court erred by denying his "motions for mistrial based on admission of 'other act' evidence pursuant to [Arizona Rule of Evidence] 404(b)."  He argues that although the State "could have shown that Mr. Younan was in charge of a group of individuals committing crimes for his benefit . . . [i]t did not need to go overboard on the Mafia allegations, which is what happened."

¶20        Younan does not cite any portion of the record where he requested a mistrial based on the introduction of so-called "Mafia" evidence, and our independent review has not disclosed any such request. We therefore confine our review to fundamental error.  Younan has the burden of establishing that: "(1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice."  *State v. James*, 231 Ariz. 490, 493, ¶ 11 (App. 2013).

¶21        Under Rule 404(b), evidence of other acts is not admissible "to prove the defendant's propensity" to commit the charged offense.  *State v. Van Adams*, 194 Ariz. 408, 415, ¶ 20 (1999).  "Evidence of prior acts is admissible if relevant and admitted for a proper purpose, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  *State v. Beasley*, 205 Ariz. 334, 337, ¶ 14 (App. 2003).  "The list of 'other purposes' in [R]ule 404(b) . . . is not exclusive; if evidence is relevant for any purpose other than that of showing the defendant's criminal propensities, it is admissible even though it refers to his prior bad acts."  *State v. Jeffers*, 135 Ariz. 404, 417 (1983).

¶22        The evidence Younan challenges was relevant to explain testimony from co-conspirators and members of the criminal syndicate that they followed his instructions to commit crimes because he appeared powerful, and they were both loyal to and afraid of him.  C.S. testified he believed he "was working for one of the Castellanos . . . [and] you can say no to a regular human being, you cannot say no to a Castellano."  C.S. further testified he and other members of the syndicate did not question Younan's decisions because "we believed he's the grandson of Paul Castellano and you don't mess with him."

¶23        Even if the challenged evidence could be fairly classified as other-act evidence under Rule 404(b), it was relevant and admissible to explain and corroborate the testimony of Younan's co-conspirators.  *See State v. Williams*, 183 Ariz. 368, 376 (1995) ("Evidence which tests, sustains, or impeaches the credibility or character of a witness is generally

admissible, even if it refers to a defendant's prior bad acts."); *Jeffers*, 135 Ariz. at 417 (evidence of defendant's prior acts of violence against witnesses properly admitted under Rule 404(b) because it explained witnesses' fear and bolstered their credibility). The superior court did not err by failing to declare a mistrial.

## CONCLUSION

¶24 We affirm Younan's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama